## BARNHILL v. COMMISSIONER OF INTERNAL REVENUE.

### BARNHILL et ux. v. SAME.

### WINBORNE v. SAME.

Nos. 5332–5334.

Circuit Court of Appeals, Fourth Circuit.

April 9, 1945.

914

L. P. McLendon and W. H. Holderness, both of Greensboro, N. C., for petitioners.

Harry Baum, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

These cases raise the question whether certain justices of the Supreme Court of North Carolina, in computing their net incomes under the federal income tax law, should be allowed deductions for traveling expenses, including expenses for meals and lodging while away from their homes in attendance upon the business of the court at the state capital in Raleigh.

Maurice Victor Barnhill is the taxpayer in cases No. 5332 and 5333, which relate to the years 1939 and 1940, respectively. Separate cases were made because he filed a joint return with his wife in 1940. He was a judge of the Superior Court of North Carolina prior to 1937, and maintained a home in Rocky Mount, which is sixty miles distant from the capital. In that year he was appointed an Associate Justice of the Supreme Court of the state, and in 1938 was elected to that office for a term of eight years beginning January 1, 1939. Two terms of the court are held each year, one beginning on the first Monday in February and one on the first Monday in September. Under the statutes of the state all the sessions of the court are held at the capital. The presence of the justices at the capital is required during the terms but not otherwise, except for an occasional visit two or three times a month.

The taxpayer continued to maintain and keep open his home in Rocky Mount after he became a member of the Supreme Court and it was continuously occupied during the tax years by some member of the family. There is an unwritten law in North Carolina that there shall be a geographical distribution of the justices of the Supreme Court throughout the state, and each justice has always maintained a legal residence in the section of the state in which he resided at the time of his elevation to the court. The taxpayer continued to vote in Rocky Mount and maintained his church and club affiliations and listed his tangible and intangible personal property for taxation and paid his poll tax at that place.

During each of the two years the taxpayer, as a justice of the Supreme Court, received a salary of $7,500 and an additional allowance of $1,550 under the state statutes, G.S.N.C. § 7-3, "in lieu of and in commutation for expenses incident to attendance upon the court." While in Raleigh he stayed at a hotel in a room which he engaged by the year at the rate of $65 per month since he found this arrangement to be the most economical. He kept no account of the cost of his meals in Raleigh since during 1939 and 1940 neither the salary nor the expense allowance was deemed to be taxable. But he estimated his expenses for meals at $2.50 per day and claimed a deduction therefor of $557.50 in 1939 and $516 in 1940, indicating that he spent 223 days in 1939 and 206 days in 1940 at the state capital. In addition the taxpayer claimed a deduction for traveling expenses by automobile at the rate of 5c per mile, amounting to $276 in 1939 and $264 in 1940. When the court was in session, the taxpayer would go from his home in Rocky

Mount to Raleigh and return once a week, and when the court was not in session, the taxpayer made the round trip two or three times a month. He made 46 round trips in 1939 and 44 round trips in 1940.

During the tax years the taxpayer owned three farms and a house in addition to his residence. Two of the farms and the house were let for a cash rent. The other farm located near Rocky Mount was rented on shares and he attempted to give it frequent personal attention. His net income from his real estate was $405 in 1939 and $544.77 in 1940. He also derived dividends from the stock of a real estate and insurance company in Rocky Mount of which he was a director, amounting to $214.40 in 1939 and $283 in 1940.

Upon this evidence the Tax Court found that the taxpayer's sole business in the tax years was that of Associate Justice of the Supreme Court of North Carolina and that his place of business was at Raleigh, the state capital. The activities of the taxpayer as one of the directors without pay and a stockholder of the real estate and insurance corporation, and as the owner of the farms and the dwelling house, were not overlooked; but the conclusion was reached that the taxpayer was not engaged in the business of farming or of investment and that his activities in these respects were merely those of an investor or owner of property. It is obvious that there was ample evidence to support these findings and conclusions.

The controversy turns upon the legal conclusion of the Tax Court that the taxpayer was not entitled to the deductions claimed for living expenses at Raleigh and traveling expenses between Raleigh and Rocky Mount. This holding was based upon the view that the statute, relating to deductions for travel and living expenses of a taxpayer while away from home on business, contemplates that the taxpayer's home shall be located in the same neighborhood as his place of business, and if he chooses to live elsewhere, he must bear the added expenses involved without the privilege of deducting them in computing his net taxable income.

The relevant provisions of the statute and Treasury Regulations are as follows: Internal Revenue Code.

Sec. 23. (as amended by Sec. 121 of the Revenue Act of 1942, c. 619, 56 Stat. 798) Deductions from Gross Income.

"In computing net income there shall be allowed as deductions: (a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

26 U.S.C.A. Int.Rev.Code, § 23.

"Sec. 24. Items not deductible.

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—

"(1) Personal, living, or family expenses; * * *."

26 U.S.C.A. Int.Rev.Code, § 24.

Treasury Regulations 103, promulgated under the Internal Revenue Code:

"Sec. 19.23 (a)-1. Business Expenses.— Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, * * * Amongst the items included in business expenses and management expenses, commissions, labor, supplies, incidental repairs, operating expenses of automobiles used in the trade or business, traveling expenses while away from home solely in the pursuit of a trade or business (see Section 19.23 (a)-2), advertising and other selling expenses, together with insurance premiums against fire, storm, theft, accident, or other similar losses in the case of a business, and rental for the use of business property. * * *"

"Sec. 19.23 (a)-2. Traveling Expenses. * * *

"(b) If an individual receives a salary and is also repaid his actual traveling expenses, he shall include in gross income the amount so repaid and may deduct such expenses. * * *

"(c) * * * Only such expenses as are reasonable and necessary in the conduct of

the business and directly attributable to it may be deducted.

"Commuters' fares are not considered as business expenses and are not deductible."

It is noteworthy that the allowable deductions enumerated in the statute are ordinary and necessary expenses incurred in carrying on the business, traveling and living expenses while away from home in the pursuit of business, and rentals for occupation of property in the pursuit of business; and that personal living and family expenses are expressly disallowed. The regulations which interpret the statute emphasize the point that the deductible business expenses must be ordinary and necessary, and that only such traveling expenses as are reasonable and necessary in the conduct of the business may be deducted. Furthermore, commuters' fares, that is, the expenses of those whose homes are near enough to their places of business to enable them to travel back and forth daily are not deductible.

The decisions of the Tax Court have been influenced by this interpretation, and for a long period of time deductions for travel and living expenses at the place of business have been denied to a taxpayer who has chosen to establish his home elsewhere. For example, this ruling has been applied to a manager of public fairs who maintained a home distant from his place of business; to a traveling salesman who was unable to show that he had established a home in any location; to a woman whose home was in New York State but whose business interests were situated in Chicago; to a Congressman whose business was of necessity performed at the seat of government, while his home was in a distant state; and to an actor who maintained a home for his family in New York while he was continuously engaged in his profession during the tax year at Hollywood, California. See Bixler v. Commissioner, 1927, 5 B.T.A. 1181; Duncan v. Commissioner, 1929, 17 B.T.A. 1088; Peters v. Commissioner, 1930, 19 B.T.A. 901; Lindsay v. Commissioner, 1936, 34 B.T.A. 840; Tracy v. Commissioner, 1939, 39 B.T.A. 578.

On the other hand, traveling and living expenses have been allowed to one who had his principal place of business and home in the same city but was obliged to live in another city for considerable periods of time in the pursuit of his principal occupation or of some other minor business activity. Such was the holding in respect to the representative of a New York house who, during the emergency of the First World War was obliged to reside for two years in Paris; to a lawyer whose regular place of business was in Toledo but who spent two weeks of each month during the tax year in Washington as chairman of a Congressional Committee, whose other members were all congressmen; and to a business man who maintained his home and principal place of business in Boston but earned a substantial salary for services performed while residing from time to time in the City of New York. See Griesemer v. Commissioner, 1928, 10 B.T.A. 386; Brown v. Commissioner, 1928, 13 B.T.A. 832; Powell v. Commissioner, 1936, 34 B.T.A. 655; Gustafson v. Commissioner, 1944, 3 T.C. 998.

In the decision in the instant case and in other decisions, the Tax Court has said that for the purposes of the statute, a taxpayer's "home" means his place of business. This statement has been criticized or repudiated by the courts in some cases on the ground that the word "home" has a well-recognized meaning and that to give it the significance of "place of business" amounts to a distortion of the language of the statute and an invasion of the domain of Congress. See Coburn v. Commissioner, 2 Cir., 138 F.2d 763; Wallace v. Commissioner, 9 Cir., 144 F.2d 407. In both of these cases an actor was allowed deductions for living expenses at Hollywood because the court found from the evidence that the employment and residence at that place were temporary while the established home of the taxpayer was located elsewhere. If this view of the evidence in these cases is taken, the actual decision was not inconsistent with the rulings which the Tax Court has made in the cases heretofore cited and the result could have been reached, as indeed it was in the Coburn case, upon the assumption that the Tax Court's interpretation of the statute is correct. In Flowers v. Commissioner, 5 Cir., 148 F.2d 163, however, the court took a position flatly at variance with that of the Tax Court by holding that an attorney who maintains a home in Jackson, Mississippi, and devotes himself exclusively to the law business of a railroad company at Mobile, Alabama, has the right under the statute

to deduct his living expenses at Mobile and his traveling expenses between the two points in computing his taxable income.

The issue must also be squarely met in the pending case for the taxpayer's only place of business and his actual residence during the greater part of the tax years has been at Raleigh, while his home in the ordinary sense has been at Rocky Mount; and the decision of the Tax Court cannot be affirmed without holding that in allowing deductions for traveling expenses to one who is away from home on business, the statute implies that the home and the place of business must be in the same general locality. We think that the statute must be given this construction and that it may be done without arbitrarily construing the word "home" as synonymous with the term "place of business".

It is clear in the first place that Congress, in prescribing the rules for the computation of net income, intended to confine the deductions for business expenses to those which are ordinary and necessary, and to prohibit the deduction of personal living or family expenses. It was recognized that the taxpayer must maintain a home for his family at his own expense even when he is absent on business, and that his personal expenses during his absence on business may fairly be regarded as expenses of the business. But it is not reasonable to suppose that Congress intended to allow as a business expense those outlays which are not caused by the exigencies of the business but by the action of the taxpayer in having his home, for his own convenience, at a distance from his business. Such expenditures are not essential to the prosecution of the business and were not within the contemplation of Congress which proceeded on the assumption that a business man would live within reasonable proximity to his business. This is not the same as saying that the word "home" means "place of business" although in most cases where deductions for traveling expenses are claimed, the result will be the same.

Doubtless these considerations give rise to the regulations set out above which confine the deductions for traveling expenses to those which are reasonable and necessary and expressly forbid the deduction of commuters' fares. This prohibition indeed would be unauthorized if the word "home" were given its ordinary meaning, for there can be no doubt that in a literal sense one who lives in the suburbs and does business in the city must pay travel expenses while absent from his home in the pursuit of business. It is significant that these provisions of the regulations have been maintained and enforced throughout successive re-enactments of the statute and that they have been followed not only in the decisions of the Tax Court but in the settled administrative practice. See O.D. 905, 4 Cum.Bull. 212 (1921); O.D. 1021, 5 Cum.Bull. 174 (1921); I.T. 1264, I-1 Cum.Bull. 122 (1922); I.T. 1355, I-1 Cum.Bull. 194 (1922); I.T. 1380, I-2 Cum.Bull. 88 (1922); I.T. 3314, 1939-2 Cum.Bull. 152; G.C.M. 23672, 1943 Cum. Bull. 66. Under these circumstances, the regulations and the administrative interpretation must be deemed to have received implied legislative approval. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52. Moreover, the decisions of the Tax Court are entitled to great weight. Dobson v. Commissioner, 320 U.S. 489, 501, 502, 64 S.Ct. 239, 88 L.Ed. 248.

We do not think that a different conclusion must be reached in the pending case because the place of residence of each Justice of the Supreme Court of North Carolina is taken into consideration at the time of his selection so that the Justices may be fairly distributed throughout the state, or because they maintain their legal residences in the sections of the state where they lived at the time of their elevation and are given an allowance by the state in commutation of the expenses incident to attendance upon the court. It is of course recognized that the bona fides of the contention advanced by the appellant North Carolina judges is completely established. Not only have they maintained their homes at the old locations but they have incurred additional living expenses at the state capital which the state authorities have found to be a proper charge upon the state treasury. It is therefore appropriate that they should seek the approval of the federal taxing authorities for the deductions they claim. But we must bear in mind that the system of federal taxation is established by acts of Congress and is not affected by state law or custom unless it is made applicable by the federal enactment. See United States v. Pelzer, 312 U.

918

S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913.[1] We must apply the underlying principles of federal taxation to state and federal officials alike, and we can see no distinction between the cases of the appellants herein and of the members of Congress who, for tax purposes, are deemed to reside in the national capital although they maintain their homes in the congressional districts which they represent.

The decisions of the Tax Court in cases Nos. 5332 and 5333 are therefore affirmed. The decision of the Tax Court in case No. 5334, which involves the tax liability of John Wallace Winborne, another Associate Justice of the Supreme Court of North Carolina, for the same tax years and raises no question not considered in the other cases, is also affirmed.

Affirmed.

---

[1] H. R. 1627, now pending in Congress, provides that for the purpose of Section 23 of the Internal Revenue Code, the home of a member of Congress shall be considered to be his place of residence in the state from which he is a member.