**BERCAW v. COMMISSIONER OF INTERNAL REVENUE.**

No. 5637.

Circuit Court of Appeals, Fourth Circuit.

Jan. 5, 1948.

W. W. Bercaw, pro se.

Louise Foster, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Helen R. Carloss and A. F. Prescott, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

This appeal is taken from a decision of the Tax Court of the United States determining that there was a deficiency of $48.-37 in the taxpayer's income tax for the year 1941. The deficiency resulted from the affirmance by the Tax Court of the Commissioner's disallowance of certain deductions claimed by the taxpayer, W. W. Bercaw. Four questions are presented for our consideration.

The first question is whether the taxpayer is entitled to deduct from his gross income for the year 1941 the cost of his meals and striker service while in the United States Army during that year. The taxpayer, a reserve army officer, was called to active duty on August 20, 1941, and served the remainder of the year at Fort Meade, Maryland, except for twelve days' duty at New Cumberland, Pennsylvania. There were no quarters at Fort Meade to house the taxpayer's family, so his family lived on a farm owned by him near Wilmington, Virginia, approximately 160 miles from his place of duty. During his stay at Fort Meade the taxpayer belonged to, and ate in, an officers' mess, a voluntary organization of officers which purchased and served food to its members. In support of this mess the taxpayer was assessed approximately $1.25 per day. He lived in quarters furnished to him rent free by the Army and the only expense incurred by him in that connection was his "striker fee"—an Army expression denoting his share of the cost of the janitor service necessary to keep clean and care for his living quarters. He expended approximately $10.00 per month for this service, which is not required by the Army Regulations and is a voluntary arrangement on the part of the officers.

During the period involved in this case the taxpayer was an Army Captain and received a base pay of $200.00 per month, plus twenty-five per cent of this base pay for length of service; in addition, he received a monthly rental allowance of approximately $80.00 and a subsistence allowance of $36.00. The taxpayer did not include his rental and subsistence allowance in his income for 1941, but included only his base and longevity pay. He also claimed a deduction from his gross income of $178.00, the amount expended by him for his meals and striker service.

This claimed deduction is based upon Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a) (1) (A), which provides:

"Sec. 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *."

The taxpayer contends that he was "away from home" within the meaning of the above section during his tour of duty in the Army, and the expenses incurred thereby were traveling expenses. In Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, at page 474, 66 S. Ct. 250, 254, 90 L.Ed. 203; the Supreme Court has held that in order to constitute a deductible travel expense, "The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." We think that the Tax Court correctly applied

this rule to the facts of the instant case. The taxpayer was engaged in the business of an Army officer. His place of business was his particular Army post. If his Army duties required him to travel, he would have received a per diem travel allowance which would not have been taxable. Jones v. United States, 60 Ct.Cl. 552. But whenever he made a permanent change of station that place of duty became his place of business and there was his "home" within the meaning of Section 23(a) (1) (A). See Commissioner v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203; Barnhill v. Commissioner, 4 Cir., 148 F.2d 913, 159 A.L.R. 1210. Thus the expenditures for meals and striker service while at this post were personal living expenses and non-deductible under Section 24(a) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 24(a) (1). This conclusion is inescapable when it is remembered that this officer has been paid commutation of quarters and a subsistence allowance, both of which allowances are not considered as income for the purposes of taxation. Jones v. United States, 60 Ct.Cl. 552; Wilson v. United States, 44 Ct.Cl. 428.

In this respect the facts of the instant case are analogous to those which were before this Court in Barnhill v. Commissioner, 4 Cir., 148 F.2d 913, 917, 159 A.L.R. 1210. There the question was whether a Justice of the Supreme Court of North Carolina should be allowed a deduction for traveling expenses, including meals and lodging, while he was away from his home and sitting with the court at the State Capital. After a thorough discussion and careful consideration of Section 23(a) (1) (A), Circuit Judge Soper, approving the disallowance of the deduction, concluded: " * * * that in allowing deductions for traveling expenses to one who is away from home on business, the statute implies that the home and the place of business must be in the same general locality."

■ The second question concerns the deductibility of the cost of an electric clock which the taxpayer purchased for use at Fort Meade. The taxpayer's duties included the supervision of recruits and seeing that they were present at specific times at various places of processing. This duty the taxpayer delegated to his assigned enlisted personnel, and it was in their headquarters that he placed the clock which was recorded on the company property records as company property acquired by contribution. Taxpayer contends that the cost of this clock was an ordinary and necessary business expense deductible under Section 23(a) (1) (A), but he can show no regulation or order from a superior that he should furnish such a clock. If the Army had considered it necessary, a clock would have been provided, and if such article were scarce, the Army was certainly in a better position to secure it than the taxpayer. While it may have simplified his duties and insured that his responsibility was properly discharged, this clock was not necessary to taxpayer's business as an officer of the Army. It was merely a voluntary and personal expenditure on his part.

The Tax Court held that the clock "constituted a gift by petitioner (taxpayer) to his company" and was not deductible. The taxpayer advances the further argument that this item, therefore, is deductible as a contribution under Section 23(o) (1) of the Internal Revenue Code. The gift, however, was not made in compliance with Army Regulations for making contributions to a United States Army company fund. In reality, the taxpayer merely presented the clock to the individual soldiers assigned to him, and we believe that is what the Tax Court meant by its holding. Hence it is not deductible as a gift to the United States for public purposes.

■ The third question involves a deduction claimed because of the loss of certain personal property. The loss occurred either while the articles were in storage in California or while they were being shipped to the taxpayer in the East, and he has not been reimbursed by either the railroad or the storehouse. The missing items were law books, a clock, and personal articles of military equipment, chiefly clothing, which an officer would procure at his own expense. The taxpayer has apparently abandoned any claim for a deduction on account of the law books and now only contends that the value of the military clothing and

equipment is deductible under Section 23 (e) (1) as a loss incurred in trade or business and not compensated for by insurance. We, however, agree with the holding of the Tax Court that the missing articles constitute personal, as distinguished from business, property.

Section 19.24-1, Treasury Regulations 103 provides that: "The cost of equipment of an Army officer to the extent only that it is especially required by his profession and does not merely take the place of articles required in civilian life is deductible. Accordingly, the cost of a sword is an allowable deduction, but the cost of a uniform is not."

This regulation has been in effect for a long time and it is well settled that: "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially re-enacted statutes, are deemed to have received congressional approval and have the effect of law." Helvering, Commissioner, v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52. Clearly, the articles of clothing, if suitable for use as military apparel, replaced similar articles of civilian wear, and if not suitable for use because of obsolescence, they were of no use to the taxpayer in the pursuit of his profession as an Army officer.

■ Among the remaining items lost were two cavalry sabers. The taxpayer, however, makes no showing that these were required Army equipment in 1941 and hence necessary to him in his profession. Since the burden is always on the taxpayer to bring himself within the terms of a statute or regulation allowing a deduction, the claimed deduction for the value of these pieces of equipment also must fail. The same conclusion is true as to the other missing articles, namely, the clock and a bootjack. There is no proof whatsoever that they were required by the taxpayer in his profession.

The taxpayer's fourth and final claim for a deduction arose in connection with an injury received by his young son in 1936 while playing in a public park in Palo Alto, California. For the purpose of bringing a tort action against the city, the tax-payer's wife was appointed guardian of the son. The Tax Court included in its findings of fact that: "Petitioner (taxpayer) and his wife as guardian entered into an oral agreement under which petitioner agreed to advance the money necessary to carry on the litigation and the guardian agreed to pay petitioner from any funds recovered by the suit an amount equivalent to such advance and further the expense petitioner had incurred as a result of the injury to his son. Under this agreement petitioner advanced approximately $450 to his wife as guardian to defray expenses of the litigation." The litigation was finally terminated unsuccessfully, and the taxpayer now asserts that he is entitled to deduct these advances as a bad debt under Section 23(k) (1). We think that this position is untenable.

■ A deduction for a bad debt under Section 23(k) (1) is allowable only if the obligation to pay is certain and actually in existence. "The term 'indebtedness' as used in the Revenue Act implies an unconditional obligation to pay." Gilman v. Commissioner of Internal Revenue, 8 Cir., 53 F.2d 47, 50, 80 A.L.R. 209.

■ The Tax Court quite correctly held that under the agreement between the taxpayer and his wife no debt ever came into existence. The guardian's duty to repay the money only arose in the event of a successful termination of the litigation, and that event never took place. The taxpayer's argument that the guardian did have an unconditional obligation to repay is contradicted by the finding of the Tax Court, and this finding is amply supported by the evidence in the record.

■ The taxpayer's next contention is that if the advances were not loans, they were expenditures made to conserve and protect property held for the production of income and therefore deductible under Section 23(a) (2) as a non-trade or non-business expense. Since these sums were advanced before 1941 they could not be "expenses paid or incurred during the taxable year" within the meaning of the section in question. Furthermore, these advances were not litigation expenses of the taxpayer but of another; the recovery

likewise was to be for the benefit of his son, not of himself. The taxpayer, therefore, does not come within the holding of the Supreme Court in Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, 163 A.L.R. 1175, that expenses of contesting an income tax deficiency are deductible as a non-business expense under Section 23(a) (2). Nor can these advances be considered as a loss sustained during the taxable year and incurred in a "transaction entered into for profit, though not connected with the trade or business" under Section 23(e) (2).

The decision of the Tax Court of the United States is affirmed.

Affirmed.