**Howe A. STIDGER and Betty M. Stidger, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 19630.**

United States Court of Appeals Ninth Circuit.

Dec. 27, 1965.

Ely, Circuit Judge, dissented.

Howe A. Stidger and Betty M. Stidger, in pro. per.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Morton K. Rothschild, Michel Cavanaugh, Dept. of Justice, Washington, D. C., for respondent.

Before MERRILL, BROWNING and ELY, Circuit Judges.

PER CURIAM: [1]

This is another of those troublesome cases involving the question whether certain travel expenses incurred by a taxpayer were incurred while "away from home" and are deductible for federal income tax purposes under section 162 of the Internal Revenue Code of 1954. At the time the deduction involved here was claimed, section 162 read in pertinent parts: [2]

"(a) In General—There shall be allowed as a deduction all the ordinary and necessary expenses paid or

[1.] This opinion was written by Judge William E. Orr. Following Judge Orr's death on October 7, 1965, Judge Browning was assigned to the panel and the case was reargued. The majority of the court as now constituted adopts Judge Orr's opinion as its own.

[2.] Section 162(a) (2) was amended in 1962 by striking out "(including the entire amount expended for meals and lodging)" and inserting in lieu thereof "(including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances)." Revenue Act of 1962, § 4(b), CCH Stand. Fed.Tax Rep. 85, 100 (extra ed. No. 44). This amendment is not involved in the case before us.

incurred during the taxable year in carrying on any trade or business, including * * *

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *."

The facts, found by the Tax Court as stipulated, are substantially as follows. During the taxable year 1958 taxpayer was a captain in the United States Marine Corps. For approximately two and one half years prior to October 1, 1957, he had been attached to an air squadron stationed in El Toro in Southern California. On October 1, 1957, taxpayer, together with his component, was assigned to duty in the Far East with the First Marine Aircraft Wing, a part of the Aircraft Fleet Marine Force, Pacific, with administrative headquarters at Marine Corps Air Station, El Toro (Santa Ana) California. It was impossible for taxpayer to be accompanied abroad by his family because Marine Corps orders prohibited dependents of personnel assigned to duty with the Aircraft Fleet Marine Force, Pacific, from accompanying such personnel or establishing homes in the Far East. During taxpayer's entire tour abroad his wife and two children remained at the family's established home in Santa Ana, California.

Commissioned officers pay for their own meals at an official duty station unless they are considered to be on a temporary assignment or in travel status, in which cases they are reimbursed for their meal expenses. Taxpayer's principal duty station while in the Far East was Iwakuni, Japan. While at Iwakuni he received free lodging; but as he was not considered to be on travel status while there, he did not receive free meals. During 1958, except for forty-nine days during which he was placed on travel status while absent from Iwakuni and reimbursed for travel expenses, taxpayer had to pay for his own meals at a cost to him of $650.

On his joint return for 1958 taxpayer deducted the $650 as a travel expense incurred while away from home. The Commissioner disallowed the deduction and claimed a deficiency. Taxpayer petitioned the Tax Court for a redetermination of the alleged deficiency, and the Tax Court found as ultimate facts that during the taxable year taxpayer's "tax home" was his military post of duty in the Far East, and that his stay there was "indefinite, indeterminate, or permanent and not temporary." Accordingly, the Tax Court found that the expenses in question were not incurred while traveling "away from home" within the meaning of section 162(a)(2) and therefore were not deductible. On appeal from the decision of the Tax Court, we are faced squarely with the question of the meaning of "home" within section 162(a)(2).

Examination of the legislative history surrounding the introduction of the phrase "away from home" into the Revenue Act of 1921 is inconclusive as to Congressional intent regarding the meaning of "home." As early as 1927, however, the Board of Tax Appeals held that the precursor of section 162(a)(2) was intended to permit a deduction for traveling expenses only if the expenses were incurred while the taxpayer was away from his "post of duty" or place of employment. Mort L. Bixler, 5 B.T.A. 1181 (1927). The word "home" thus became a term of art with a meaning different from its normal usage as residence, domicile or dwelling place; and the "tax home" doctrine was established.

Since the Tax Court's decision in the Bixler case the Commissioner has consistently maintained that "home" in the statute means "tax home" and that one's tax home is one's "home post" or place of employment. This construction has been accepted by a number of courts. See Barnhill v. Commissioner of Internal Revenue, 148 F.2d 913, 159 A.L.R. 1210 (4th Cir. 1945); O'Toole v. Commissioner of Internal Revenue, 243 F.2d 302 (2nd Cir. 1957).

In Wallace v. Commissioner of Internal Revenue, 144 F.2d 407 (9th Cir. 1944), however, this court rejected the "tax home" doctrine and held that the travel-

ing expenses of a taxpayer who regularly lived in San Francisco but visited Los Angeles on business met the statutory requirement that traveling expenses be incurred while away from home. In Wallace we unequivocally stated that "home" as used in the statute should be given its ordinary and usual meaning. Wallace v. Commissioner of Internal Revenue, supra, at 410.

A chance to resolve a conflict among the circuit courts as to the meaning of "home" to which our opinion in Wallace contributed came before the Supreme Court in Flowers v. Commissioner of Internal Revenue, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). In considering the travel expense deduction the court set out three requirements, each of which had to be met before the deduction would be allowed.

> "(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.
>
> (2) The expense must be incurred 'while away from home.'
>
> (3) The expense must be incurred in pursuit of business * * *."

The court noted the division of opinion regarding the meaning of "home" in the circuit courts but found it unnecessary to reconcile because in its view of the case the expenses involved did not meet the third requirement of being incurred in pursuit of business. Flowers thus avoided rather than settled the "home" controversy.

Strictly applied, the "tax home" doctrine would greatly restrict the travel expense deduction; and the Tax Court soon recognized an exception to it in cases where the taxpayer's employment away from home could be considered "temporary." Chester D. Griesemer, 10 B.T.A. 386 (1928); Walter F. Brown, 13 B.T.A. 832 (1928); accord Coburn v. Commissioner of Internal Revenue, 138

F.2d 763 (2nd Cir. 1943). However, where the employment away from home was of indefinite or indeterminate duration, the deduction was denied. Willard S. Jones, 13 T.C. 880 (1949). The Commissioner accepted the "temporary-indefinite" distinction and recognized "temporary" employment as an exception to the rule that "home" equals place of employment. I.R.S.Pub. No. 300, 5 CCH 1956 Stand.Fed.Tax Rep. para. 6347; Rev.Rul. 189, 1960-1 Cum.Bull. 60, 65.

The Supreme Court had a second opportunity to clarify the "home" controversy when the question of the scope of the "temporary" employment exception came before it in Peurifoy v. Commissioner of Internal Revenue, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958). In Peurifoy three construction workers claimed deductions for living expenses incurred while living for periods of from eight to twenty months at construction sites some distance from their permanent residences. The Tax Court allowed the deductions on the ground that the employment away from home was "temporary." The Fourth Circuit assumed without deciding that the temporary employment exception was valid and that it applied to the "exigencies of the business" requirement as well as the "away from home" requirement set out in Flowers v. Commissioner of Internal Revenue, supra. The court then reversed because the taxpayers had not met their burden of proof of showing their employment was temporary and not indefinite.

Upon review on writ of certiorari the Supreme Court made the same assumptions and stated:

> "Generally, a taxpayer is entitled to deduct unreimbursed travel expenses * * * only when they are required by the exigencies of business * * *.

> To this rule, however, the Tax Court has engrafted an exception which allows a deduction for expenditures of the type made in this case

where the taxpayer's employment is 'temporary' as contrasted with 'indefinite' or 'indeterminate.' * * * The respondent does not in the present case challenge the validity of this exception to the general rule."

The Commissioner contends that in Peurifoy the Supreme Court approved the temporary employment concept as an exception to its rule in Flowers v. Commissioner of Internal Revenue, supra, and that, therefore, a post of indefinite or indeterminate employment necessarily becomes the taxpayer's "tax home." It is clear from the language quoted above, however, that the validity of the temporary employment exception was assumed without decision by the Supreme Court in Peurifoy because the court did not consider that a challenge to the exception was before it. The court affirmed on the ground that it would not disturb the circuit court's factual assessment that the employment involved was not temporary. And for the second time the Supreme Court specifically avoided a definition of the word "home."

This was our position in Harvey v. Commissioner of Internal Revenue, 283 F.2d 491 (9th Cir. 1960), when we stated:

"Peurifoy, then, does not establish the rule, as suggested by the Commissioner, that the place where a taxpayer is employed for an 'indefinite' period, is *necessarily* his tax home."

In Harvey the taxpayer maintained his home in Santa Monica, California, where he worked for the Douglas Aircraft Company. From Santa Monica he was transferred on temporary assignment to Edwards Air Force Base, 117 miles away. Taxpayer's tour of duty at Edwards was to be for an indeterminate length of time; he knew only that he would work there as long as he was needed, a period which in the circumstances of his job could be expected to last from a few months to two years. In fact, he remained thirteen months.

The Tax Court found Edwards to be the taxpayer's home during the taxable year in question on the ground that his term of employment there was "indefinite." We concluded that when the term "indefinite" was used as the Tax Court used it, the test applied became a mechanical one, incapable of effectuating the purpose of the deduction provision; and we formulated a more flexible test:

"An employee might be said to change his tax home if there is a reasonable probability *known to him* that he may be employed for a long period of time at his new station. What constitutes 'a long period of time' varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. On the other hand, if it is very likely that taxpayer's stay away from home will be short, then it seems quite unreasonable to expect him to move his domicile, even though it cannot be said that his employment will terminate 'within a fixed or reasonably short period,' to use the words of the Tax Court."

In drawing the distinction between long and short periods of employment we did not reject the distinctions which had been drawn by other courts, but we did reject the inflexible manner in which the distinction had been employed by the Commissioner and the Tax Court. We used the length of employment away from one's established home as a factor in determining what we considered to be the fundamental question in these travel expense cases—is it reasonable to expect the taxpayer to move his residence to his place of employment. Applying this test to the facts of the Harvey case, we held that the taxpayer could not reasonably

have been expected to move his residence, and the deduction was allowed.[3]

In Wright v. Hartsell, 305 F.2d 221 (9th Cir. 1962), we again looked to whether it would be reasonable to expect the particular taxpayer to move his home nearer to the place where he was working in determining the deductibility of claimed travel expenses. In Wright the taxpayer commuted daily from his residence in Pocatello, Idaho, to work at Atomic Energy Commission research sites seventy miles away in an inhospitable desert area remote from any town or place of habitation. We held that a taxpayer's inability to maintain a home in the usual sense at his place of employment was a valid reason for allowing the deduction as travel expenses of the resulting costs of transportation, food and lodging. We concluded, however, that the taxpayer had a duty to mitigate his expenses by moving as near to the job site as is reasonable. The deduction in Wright was accordingly measured with reference to the nearest habitable community to the employment site, the town of Arco, Idaho. As Arco was neither the taxpayer's actual residence nor his place of employment, our decision in Wright necessarily proceeded upon the basis that "home" as used in the statute means residence, with the qualification that the taxpayer should establish his residence as near to his place of employment as is reasonable.

█ The Commissioner has argued that rejection of the "tax home" doctrine will result in the deductibility of nondeductible commuting and other personal expenses. We think, however, that the words of section 162 limiting deductions to "ordinary and necessary" expenses stand to prevent such a result. It has been clear since the Supreme Court's decision in Flowers v. Commissioner of Internal Revenue that "the exigencies of business rather than the personal conveniences and necessities of [this taxpay-

er] must be the motivating factors." Flowers v. Commissioner of Internal Revenue, supra.

█ By placing the emphasis on the "ordinary and necessary" requirement of the statute, there is no necessity for attributing any special "tax sense" to the word "home." Both the Commissioner's distinction between temporary and indefinite employment and the "exigencies of business" test as set out in Flowers v. Commissioner of Internal Revenue look to the duration of employment as a principal factor in separating deductible business expenses from nondeductible personal expenses. The "exigencies of business" test follows directly and naturally from the "ordinary and necessary" requirement of the statute itself. The temporary-indefinite distinction, on the other hand, introduces into the statute an extraneous concept formulated in the first place only to provide an exception to the Commissioner's strained rule that "home" equals place of employment. Neither the rule nor its exception are necessary and both obscure the fundamental question of whether expenses claimed as travel expenses under section 162 are ordinary and necessary business expenses. Deductibility under the statute need not turn on fictions and inflexible rules of thumb. By looking to the ordinary and necessary requirement of the statute the end result will in most cases be substantially the same, and the unfairness inherent in a strict application of the "tax home" doctrine will be avoided.

█ "Home" in the statute, then, means home in its ordinary and usual sense, as we stated long ago in Wallace v. Commissioner of Internal Revenue. The length of time a taxpayer is employed away from that home does not itself give the answer, but is a factor in determining the answer to the question whether the taxpayer could reasonably be

---

3. In Harvey v. Commissioner of Internal Revenue, both the taxpayer and the Commissioner had stipulated that "home" meant "home post" or place of employment and not place of abode. The mean-

ing of "home" as such was, therefore, not before us; and we inquired only into the application of the distinction between temporary and indefinite employment.

expected to have moved his home. If it appears reasonable to have expected the taxpayer to move closer to his place of employment, then expenses claimed as travel expenses cannot be said to be "ordinary and necessary." On the other hand, if such a move appears unreasonable, the ordinary and necessary requirement is met, and the deduction will be allowed.

■ We turn now to the particular facts of the case before us. Taxpayer's duty station in the Far East was dictated by military orders. Marine Corps orders also prohibited him from establishing a home for his dependents in the Far East. There is no question here as to whether it was reasonable for taxpayer to have moved his home. He had no choice but to maintain a separate residence for his family.[4] Accordingly, we hold that taxpayer's travel expenses while away from home during the taxable year in question were "ordinary and necessary" expenses and are deductible under section 162.

■ The Commissioner appears to be making the final argument in this case that taxpayer is not entitled to a deduction for the meal expenses because he has failed to show that he would not have been obliged to pay an equal amount for meals at his home post in the United States. The statute, however, specifically provides that "traveling expenses, (including the *entire* amount expended for meals and lodging)" is deductible. (Emphasis added.) We have determined the expenses claimed to have been ordinary and necessary. Taxpayer need make no further showing.

The judgment is reversed.

---

4. Taxpayer's position is similar to that of the public official who must maintain his home elsewhere than his official place of employment. In such cases the travel expense deduction has been granted. United States v. Le Blanc, 278 F.2d 571 (5th Cir. 1960); Moss v. United States, 145 F.Supp. 10 (W.D.S.C.1956); Emmert v. United States, 146 F.Supp. 322 (S.D.Ind.1955).

ELY, Circuit Judge (dissenting):

I dissent. With our late Brother Orr, one of the noblest of men, I discussed my opposing views, and he, without doubt, would have expected and encouraged me to record them.

When the Marine Corps transferred the taxpayer to his post of duty in Japan, the assignment was for a period of fifteen months. The period was subject to extension by orders of the Marine Corps. As the majority points out, there were forty-nine days during taxpayer's fourteen and one-half months of service in Japan when he was away from his station on temporary duty, placed in "travel status", and reimbursed for his expenses. For the remainder of the period of overseas duty, approximately thirteen months, the taxpayer received from the Government, in addition to his lodging, a tax-exempt payment of approximately $145 per month as a quarters and subsistence allowance. Notwithstanding the fact that the allowance for subsistence was $42.50 per month, the majority upholds the taxpayer's claim that the *entire* cost of his meals during the approximate thirteen-month period is a tax-deductible expense allowance. In so doing, the majority casts our circuit into direct conflict with Revenue Ruling 55–571, 1955–2 Cum.Bull. 44,[1] and with the decision of the Fourth Circuit in Bercaw v. Commissioner of Internal Revenue, 165 F.2d 521 (1948), wherein the Court wrote,

"The taxpayer was engaged in the business of an Army officer. His place of business was his particular Army post. If his Army duties required him to travel, he would have received a per diem travel allowance * * *. Thus the expendi-

---

1. "members of the Armed Forces of the United States on permanent duty assignments at official stations overseas are not traveling 'away from home' and may not deduct their expenses for meals and lodging at such locations, even though they are required to maintain homes in the United States for their families who are not allowed to accompany them."

tures for meals and striker service while at this post were personal living expenses and non-deductible * * *. This conclusion is inescapable when it is remembered that this officer has been paid commutation of quarters and a subsistence allowance, both of which allowances are not considered as income for the purposes of taxation."

165 F.2d at 524. (Citations omitted.) See also James R. Whitaker, 24 T.C. 750 (1955).

Regardless of whether or not the taxpayer was "away from home" within the meaning of that language as it is used in section 162(a)(2), the only expenses which are deductible under the section are "traveling expenses". Flowers v. Commissioner of Internal Revenue, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). "The expense must be a reasonable and necessary *traveling* expense, as that term is generally understood." 326 U.S. 470, 66 S.Ct. 252. (Emphasis added.) It should follow that the question is not whether the taxpayer was "away from home", but whether during the period for which the expense is claimed he was actually "traveling". The Tax Court has determined that he was not, and our duty is to sustain the finding absent demonstration by the taxpayer that the finding was clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed. 2d 1218 (1960); Truck Terminals, Inc. v. Commissioner of Internal Revenue, 314 F.2d 449, 455 (9th Cir. 1963); Young v. Commissioner of Internal Revenue, 268 F.2d 245 (9th Cir. 1959).

A factual determination of the Tax Court, supported by substantial evidence, should not, on review, be set aside as "clearly erroneous", unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Commissioner of Internal Revenue v. Duberstein, supra, 363 U.S. at 291, 80 S.Ct. at 1200, quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948), and,

in my opinion, the whole body of evidence clearly supports the Tax Court's finding. In the first place, the period of time for which the taxpayer was assigned to his Japanese post made of that post his "permanent" station in a military sense. In making provisions for "travel and transportation allowances * * * upon a *change* of *permanent* station" (37 U.S. C. § 404(a). (Emphasis added.)), the Congress has recognized that a soldier's "permanent station", being subject to "change", is never permanent in an enduring sense. In the present case, however, the period of assignment, fifteen months with possibility of extension, was factually determined to be an "indefinite" period rather than a "temporary" period, and this should be an important, if not a controlling, consideration. Peurifoy v. Commissioner of Internal Revenue, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed. 2d 30 (1958). In the second place, the Marine Corps itself determined that the taxpayer, during his fourteen and one-half months in Japan, was not in "travel status" except for the forty-nine days when he was temporarily detached to locations comparatively short distances from his "permanent" Japanese post. If it be conceded that the Marine Corps' determination should not be conclusive, it nevertheless constitutes strong support for the Tax Court's factual decision. William W. Todd, 10 T.C. 655 (1948). See also Allan Cunningham, 22 T.C. 906 (1954).

The Congress has undertaken to assure that military men who serve our country overseas shall not suffer undue financial loss. It is provided that the Secretaries of the uniformed services may authorize payment to overseas military personnel of per diem allowances related to the cost of living, "including a cost of * * * subsistence", and such allowance is authorized to be made to the soldier "whether or not he is in a travel status". 37 U.S.C. § 405, revising in 1962 without substantial change The Career Compensation Act of 1949, ch. 681, § 303(b), 63 Stat. 813. From these provisions I see an intent on the part of Congress that

the soldier assigned to overseas duty shall not sustain significant financial loss and that any such loss shall be prevented by the direct payment of travel expenses and increased allowances rather than by tax deduction which might properly be claimed by others for whom no specific increased benefits are provided.[2]

I would affirm the Tax Court.

2. I do not believe that in the selection of qualified military personnel for overseas duty, the Department of Defense should be invited to concern itself with increased cost to the Government depending upon whether one soldier is "away from home" and another soldier, with a different family status, is not.

In the so-called "Cuban crisis" of recent years, we read that the dependents of our military personnel stationed at Guantanamo Bay were removed to the United States. Would the majority say that those servicemen, immediately upon the transfer of their dependents, became "away from home" and commenced to "travel"?

It is anomalous and discriminatory that our servicemen now engaged in Vietnam are entitled, under the majority opinion, to a more favorable tax treatment in our circuit than are those who, while doubtless fighting with equal valor, are denied deductions for their "traveling" expenses in the Fourth Circuit and, apparently, in the Sixth Circuit also. See Commissioner of Internal Revenue v. Motch, 180 F.2d 859 (6th Cir. 1950), wherein the court wrote, at 861,

"[An armed services officer] is limited in his personal expenditures chargeable to the government, or taxwise deductible, to the usual stipends fixed under appropriate regulations adopted in pursuance of Acts of Congress for his subsistence and travel expenses."