Dennis D. Goodman and Jacqualine A. Goodman v. Commissioner.
Goodman v. Commissioner
Docket No. 4072-69.
United States Tax Court
T.C. Memo 1971-319; 1971 Tax Ct. Memo LEXIS 16; 30 T.C.M. (CCH) 1369; T.C.M. (RIA) 71319; December 20, 1971, Filed Dennis D. Goodman, pro se, 358 Town Creek Drive, Lexington Park, Md.Sheldon M. Sisson, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' income tax for 1966 and 1967 in the amounts of $1,209.46 and $1,286.51, respectively. The sole issue for decision is whether petitioner Dennis D. Goodman was "away from home in the pursuit of a trade or business" during 1966 and 1967 within the meaning of section *17 162(a)(2). [1]
Findings of Fact Dennis D. Goodman (hereinafter referred to as petitioner) and Jacqualine A. Goodman, husband and wife, resided in North Hollywood, California, at the time they filed their petition. They filed joint Federal income tax returns for 1966 and 1967 with the district director of internal revenue, Los Angeles, California. After he was graduated from high school, petitioner started to work for Lockheed California Corporation (hereinafter Lockheed) at its Burbank, California, plant on October 24, 1960. He continued to work for Lockheed throughout the years in issue. During February 1965, petitioners had their first child. About 2 1/2 months later, the child was found to have a birth defect which required her to be put in a cast from her shoulders to her ankles. Due largely to the financial burden which this medical care placed on petitioner, he began to look for a position which paid more money. He found such a position with Lockheed at its Edwards Air Force Base (hereinafter sometimes referred to as Edwards or the base) facility, located about *18 90 miles from petitioners' home in North Hollywood, California; this position was a combination shipping clerk and tool crib attendant. The job at Edwards was classified by Lockheed as a temporary one; petitioner was informed that it would last 12 months unless the company's contract was earlier terminated by the Government. Petitioner was, in fact, employed on this job for 13 months. Shortly after his arrival at Edwards Air Force Base, in May of 1965, petitioner rented a house in Lancaster, California, about 25 miles from the base, so that his wife and baby could be with him; this permitted petitioner to help care for the baby while she was in the cast. After about 3 months, the baby was removed from the cast so that petitioner's wife was able to care for her alone. Shortly thereafter petitioner's wife and baby returned to the house petitioners were renting in North Hollywood, and petitioner moved into an apartment in Lancaster. During 1966, about 1 week before petitioner's first job terminated, a representative of Lockheed asked him whether he was interested in taking another job at Edwards. The representative told petitioner that this job would last about 8 months. After *19 discussing the opportunity with his wife, petitioner decided to accept the job. In this position, petitioner worked directly with Air Force personnel in 1370 purchasing small parts needed at the base. This job lasted for the anticipated 8 months. Again, as the project on which petitioner was working neared its end, petitioner was, during January 1967, approached by a company representative about a third job assignment at Edwards. This job, which was flight test oriented, was expected to last about a year. Disregarding his wife's pleas that he return to North Hollywood, petitioner accepted the job and remained in it for approximately 16 months, until May 1968. At that time he returned to a position with Lockheed in Burbank and to the rented house occupied by his family in North Hollywood. During 1966 and 1967, Lockheed was engaged in numerous projects at Edwards Air Force Base. Employees were paid a bonus of 45 cents per hour to work at the base, and they also received reimbursements of expenditures for food and rent, and a mileage allowance for transportation to and from their residences. After 1965 the living expense reimbursements took the form of a per diem allowance. Petitioner *20 has not placed in the record any evidence of the amount of his actual expenditures for rent, food, or transportation. Since the per diem allowance was higher during the first 90 days that an employee was stationed at Edwards than thereafter, Lockheed found it financially desirable to transfer employees from one project to another at the base rather than to bring in new employees. By transferring employees between projects, Lockheed was also able to reduce the cost of running security checks on its new employees. About 150 of the employees who went to Edwards at or about the same time as petitioner remained at the base for at least the 3 years petitioner was there. Some of them continued to work at the base after he left. During the first 12 months that petitioner was at Edwards, Lockheed did not withhold any tax from the amounts it paid him as field service subsistence and as mileage allowance. This period included the first 4 months of 1966, during which he received $2,047.40; this amount was not reported in petitioner's W-2 form and was not included as income in his tax return for that year. For the last 8 months of 1966 and for the entire year of 1967 petitioner received $4,026 *21 and $6,085, respectively, to cover his expenses while at Edwards. Lockheed withheld tax on these amounts and petitioner claimed such amounts as "Employee business expense" deductions in his returns for those years. Respondent determined that the deductions were not allowable "because * * * [they were] for commuting expenses or because * * * [they were] not for traveling expenses while away from home within the meaning of Section 162(a)(2) of the 1954 Code." He further determined that the $2,047.40 "received [as] field service subsistence and mileage allowance" during 1966 was taxable income. Ultimate Findings of Fact Petitioner was not temporarily "away from home in the pursuit of a trade or business" within the meaning of section 162(a)(2) during 1966 and 1967. Opinion We are again called upon to draw the line between section 262, which denies any deduction for "personal, living, or family expenses," and section 162(a)(2), which allows a deduction for "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." Petitioner contends that he was only temporarily away from his h0me in the pursuit *22 of his employment at Edwards Air Force Base from May of 1965 until May of 1968 and is, therefore, entitled under section 162(a)(2) to deductions for the cost of his meals, lodging, and transportation to and from the base during that period. Respondent contends that petitioner's employment at Edwards was not temporary, that Edwards became his "home" within the meaning of section 162(a)(2), and that, consequently, the cost of his meals, lodging, and transportation was a nondeductible personal expense. As analyzed by the classic opinion of the Supreme Court in Commissioner v. Flowers, 326 U.S. 465, 470 (1946), the language of the predecessor of section 162(a)(2) - "traveling expenses * * * while away from home in the pursuit of a trade or business" - contains three requirements: (1) The expense must be a reasonable and necessary traveling expense; (2) The expense must be incurred "while away from home"; and (3) The expense must be incurred in pursuit of business. This means that there 1371 must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or his employer, and the expenditure must be necessary and appropriate *23 to the development and pursuit of the business or trade. The application of these principles has engendered much difficulty where a taxpayer with an established residence accepts employment at another location, continues to maintain that residence for his family, and claims deductions for the costs of his meals, lodging, and related expenses at the place of his new employment. In numerous court opinions, it has been held that when an assignment to work at a particular location is "temporary" and the expenses are required by the exigencies of one's business, deductions for meals and lodging are allowable as traveling expenses. On the other hand, where the assignment is for an "indefinite" or "indeterminate" duration, such deductions are not allowable. See e.g., Cockrell v. Commissioner 321 F. 2d 504, 507 (C.A. 8, 1963), affirming 38 T.C. 470 (1962); Commissioner v. Peurifoy, 254 F. 2d 483, 486-487 (C.A. 4, 1957), affirmed per curiam, 358 U.S. 59 (1958). Some courts have treated this gloss on the language of section 162(a)(2) as an interpretation of the word "home," dealt with in the second requirement as explained by Flowers, supra; *24 others have connected it with the third requirement, the relationship of the expenditure to the pursuit of business. See discussion in Commissioner v. Stidger, 386 U.S. 287, 290-292 (1967); Rosenspan v. United States, 438 F. 2d 905, 910-912 (C.A. 2, 1971); Wills v. Commissioner, 411 F. 2d 537 (C.A. 9, 1969), affirming 48 T.C. 308 (1967). In any event, as has been frequently stated, the purpose of the section 162(a)(2) deduction is to equalize the burden of the taxpayer whose employment requires business travel with that of the taxpayer whose employment does not. James v. United States, 308 F. 2d 204, 207 (C.A. 9, 1962). Lloyd G. Jones, 54 T.C. 734, 740 (1970), affd. 444 F. 2d 508 (C.A. 5, 1971); Ronald D. Kroll, 49 T.C. 557, 562 (1968). This amelioration of the burdens of the taxpayer who is required to travel is achieved by allowing deductions for duplicative expenses for meals, lodging, and related items at his temporary post of duty. Commissioner v. Peurifoy, supra at 487; Truman C. Tucker, 55 T.C. 783, 786 (1971). In applying these principles "The *25 exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." Ford v. Commissioner, 227 F. 2d 297, 299 (C.A. 4, 1955), quoting from Commissioner v. Flowers, supra at 474. Thus, if a taxpayer chooses for personal reasons to maintain a residence for his family at a substantial distance from his employment, his transportation and living expenses are incurred as a result of his personal choice and are, therefore, not deductible. Commissioner v. Flowers, supra; Truman C. Tucker, supra at 786; Ronald D. Kroll, supra at 561-562. In the final analysis, the question is whether it would be reasonable in the circumstances of the particular case to expect the taxpayer to move his family to the new work location and establish his permanent residence in that area. If so, the job assignment is not temporary and either the place of employment becomes his tax home or the costs of living at the place of employment are not incurred in the pursuit of business. In either event, the cost of his meals, lodging, and related items are not deductible under section 162(a)(2). *26 When petitioner accepted his first job assignment at Edwards, he was informed that the project on which he was engaged would last for 1 year - it in fact lasted for 13 months. Successive assignments stretched his Edwards stay to 3 years. In itself, it may not be unreasonable to expect a taxpayer to move to an area for a job expected to last for only 1 year, cf., e. g., Truman C. Tucker, supra at 787. However, from the testimony given by petitioner, we do not think that, as he contends, each project on which he worked should be considered separately. Rather, we think he could reasonably have expected to be employed on other Lockheed projects at Edwards for an indefinite period and that all the projects on which petitioner worked and could have worked should be considered for purposes of determining whether it was reasonable to expect him to move his residence to the vicinity of the base. Lockheed was engaged in numerous projects at and around Edwards. As a matter of economics, Lockheed preferred to transfer employees already at the base from one project to another rather than to bring in 1372 new employees for each project - allowances for new employees were greater *27 than for those who were already working at Edwards, and the costs of security checks on new employees were avoided. This factor resulted in petitioner's being offered successive jobs at the base, and we think he was aware of this possibility at the time he accepted his first job at Edwards. Petitioner, in fact, worked at the base for a period of 3 years, as did 150 other employees who went to Edwards at or about the time he did. From these facts, we think that at the time petitioner accepted his first job at Edwards he could reasonably have expected this employment to continue for an indefinite or substantially long period, Wright v. Hartsell, 305 F. 2d 221, 224 (C.A. 9, 1962), and that it would have been reasonable to have expected him to have moved his family to the vicinity of Edwards. That he stopped working at the base, was a purely personal choice - his wife wanted him to return to live in their rented house in North Hollywood. Peurifoy v. Commissioner, supra at 487. As to the expenses incurred for transportation between Lancaster and Edwards, these items are nondeductible commuting expenses. Sanders v. Commissioner, 439 F. 2d 296 (C.A. 9, 1971), *28 affirming 52 T.C. 964 (1969); Barnhill v. Commissioner, 148 F. 2d 913, 917 (C.A. 4, 1945), affirming a Memorandum Opinion of this Court; Leo M. Verner, 39 T.C. 749, 755-756 (1963). In summary, the expenses incurred by petitioner in this case were not caused by the exigencies of his employment. There was no business need for his incurring duplicate living expenses. He did so solely for personal reasons. Consequently, his living and commuting expenses while at Edwards are not deductible and the amounts received from his employer during 1966 as reimbursement for such expenses constitute additional income. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩