Cyril K. Chappuis and Eunice F. Chappuis v. Commissioner.
Chappuis v. Commissioner
Docket Nos. 5961-65, 2957-66.
United States Tax Court
T.C. Memo 1968-48; 1968 Tax Ct. Memo LEXIS 250; 27 T.C.M. (CCH) 222; T.C.M. (RIA) 68048; March 25, 1968. Filed *250 Held, petitioners are not entitled to deduct any amount as "away from home expenses" in the years 1962 and 1963. Cyril K. Chappuis, pro se, 7507 Nancemont Rd., Springfield, Va. Charles F. T. Carroll, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in income tax for the calendar years 1962 and 1963 in the amounts of $765.27 and $976.36, respectively. The sole issue is whether petitioners are entitled to deduct, under any section of the Internal Revenue Code of 1954, as amended, the amounts of $2,066 in 1962 and $2,516 in 1963 claimed on their joint returns as "away from home expenses." Findings of Fact Some of the facts were stipulated. The stipulation, together with all the exhibits attached thereto, is incorporated herein by reference. Petitioners are individuals, husband and wife. They resided in Springfield, Va., at the time of the filing of the petitions in these proceedings. They filed their joint Federal income tax returns for the years 1962 and 1963 with the district director of internal revenue, Baltimore, Md., and the district director of internal revenue, Richmond, Va., respectively. (Note: Whenever *251 the term petitioner is used, it will refer to the petitioner husband.) During World War II, while petitioner was employed as chief engineer for a consulting engineering firm in Dayton, Ohio, he was ordered to duty at Wright-Patterson Field as a lieutenant in the Army Reserve. In February 1946 petitioner accepted a Civil Service position with the Department of Agriculture in Washington, D. C. During 1946 petitioner was requested to return to military service. He agreed to enter on a 2-year active duty tour and was assigned as chief communications officer for the Air Forces in Europe and North Africa in 1947 and 1948. In the latter part of 1948 petitioner returned to his former Civil Service position with the Department of Agriculture. In May 1951 petitioner was again ordered to active duty at Baltimore, Md., as chief of communications, division of research and development for the newly formed Air Force Research and Development Command. This tour of duty lasted 4 years, 2 years of which were in French Morocco, and a short time in Rome, N. Y. While on this tour of duty, petitioner acquired a service-connected disability known as arthralgia. This disability became worse whenever petitioner *252 was in a cold climate, which fact he discovered while he was stationed in Rome, N. Y.
In June 1955 petitioner accepted a position in the Executive Office of the President in the Office of Civil Defense Mobilization 223 (OCDM). In or about September 1959, this office was moved to Battle Creek, Mich., and petitioner was asked to move with the office. Petitioner agreed to go, subject to the recommendations of his doctor and a specialist in arthralgia. The specialist advised petitioner not to go to Battle Creek as the climate there was too cold. Petitioner decided not to go to Battle Creek, whereupon he was involuntarily separated from his civilian employment with the Government and, having had 20 years of service, he retired. At this time petitioner was doing advanced work on a master's degree at George Washington University in Washington, D.C. He then went to the University full time while looking for another position in the Washington area. Not having found a position by the end of the semester in February 1960, he accepted a position in Santa Monica, Calif. He found the California climate completely unsuitable because of his service connected disability and he returned to Washington, *253 D.C., in August 1960. Upon his return to Washington, he reinvestigated a position which had been offered to him earlier by Bendix Aviation Corporation at Towson, Md., which is near Baltimore. He reached an agreement with Bendix that he would go to work for Bendix, beginning January 3, 1961, for an indefinite period of time. Under the compensation agreement which he signed, petitioner agreed that "My employment is on a calendar month to month basis * * * at the rate of $1,250.00 per month." Petitioner remained with Benix through December 1963, at which time he accepted a position with the Government in Washington, D.C., in the Department of Defense, and was still employed there at the time of the hearing in this proceeding. Petitioner's employment record at Bendix was favorable to him and Bendix would have desired to have retained him in their employ. At the beginning of 1961 petitioners lived in Washington, D.C. In September 1961 petitioner purchased a house in Springfield, Va., and in October 1961 petitioner moved into it. Petitioner purchased this house because the climate in that area was not injurious to his health and because he wished to live there in retirement. During 1962 *254 and 1963 while the petitioner was working for Bendix in Towson, Md., petitioner did not commute daily but, rather, took a room in Towson or north Baltimore and lived there during the week. On weekends petitioner returned to his residence in Springfield, Va. On their income tax return for 1962, petitioners deducted $344 for room rent for the petitioner in Towson or Baltimore, and $1,722 for meals bought by petitioner in Baltimore, for a total of $2,066. On their income tax return for 1963, petitioners deducted $416 for room rent for petitioner in Towson or Baltimore, and $2,100 for meals bought by petitioner in Baltimore, for a total of $2,516. Petitioner included in these deductions the estimated cost of his meals while he was in his Springfield residence on weekends. Respondent disallowed all of these deductions. In a statement attached to the deficiency notice for 1962, the respondent explained his disallowance thus: It has been determined that the amount of $2,066.00 claimed as a deduction in your 1962 return for away from home expenses does not constitute an allowable deduction under the provisions of section 162 or any other section of the Internal Revenue Code. Bendix maintained *255 no place of business at Springfield, Va. Petitioner's employment agreement with Bendix did not require petitioner to maintain a residence at Springfield. Petitioner had a major operation in October 1962 and was away from his work for 2 months thereafter. During 1962 and 1963 petitioner Eunice F. Chappuis was employed in the Finance and Accounts Office, U.S. Army, in Washington, D.C. Ultimate Findings Petitioner was not away from home while he was living in Towson or Baltimore, Md., in 1962 and 1963. The cost of petitioner's meals and lodging in Towson and Baltimore in 1962 and 1963 was a personal and living expense and not a business expense. Opinion Petitioner contends that during the taxable years 1962 and 1963 his "home" as that term is used in section 162(a)(2), I.R.C. 1954, [1] was in Springfield, Va., that his employment in Towson, Md., during those 224 years was "temporary" and that, therefore, his expenses in Towson during those years for meals and lodging were "traveling expenses * * * while away from home in the pursuit of a trade or business" deductible as such under section 162(a)(2). Subparagraph (2) of this section was amended by section 4(b) of Public Law 87-834, October *256 16, 1962, effective with respect to taxable years ending after December 31, 1962, but respondent is not contending that the amount in question for 1963 was either "lavish or extravagant" under the amendment. [2] Respondent contends that the amounts in question were for "personal, living * * * expenses" and specifically nondeductible under section 262, I.R.C. 1954. [3]
The general rule is that "home" as used *257 in the quoted statute means the taxpayer's principal place of business or employment whether or not it coincides with his residence. See Commissioner v. Stidger,, 386 U.S. 287, wherein the Supreme Court said, in part: From the Revenue Act of 1921 down to § 162(a)(2) of the 1954 Internal Revenue Code, Congress has provided deduction from taxable income for travel expenses, including amounts expended for meals and lodging, while "away from home." Although Congress has not defined the crucial phrase "away from home," administrative rulings and regulations have been directed toward that problem. In 1921, a general rule was established to the effect that "home" meant the taxpayer's principal place of business or employment whether or not it coincided with his place of residence. * * * While the court below, together with the Fifth and Sixth Circuit Courts of Appeals, have not always agreed with this interpretation, the Tax Court and all of the other Circuit Courts of Appeals which have considered it have sustained the Commissioner. * * * See, also, O'Toole v. Commissioner, 243 F. 2d 302 (C. A. 2, 1957), affirming a Memorandum Opinion of this Court, and Robert A. Coerver, 36 T.C. 252, affirmed *258 per curiam, 297 F. 2d 837 (C.A. 3, 1962). Generally, only the traveling expenses of a taxpayer while away from his principal place of business due to the exigencies of such business are deductible by him. See Commissioner v. Flowers, 326 U.S. 465. An exception to the general rule is made when the employment of a taxpayer in a locality other than the locality of his residence is "temporary" as contrasted with "indefinite" or "indeterminate." See Peurifoy v. Commissioner, 358 U.S. 59, 60, rehearing denied 358 U.S..uo (1958). In the instant case it is obvious that during the period from January 1961 through December 1963 (three full years), petitioner's only place of business was in Towson. Therefore, his expenses for meals and lodging in or near Towson during 1962 and 1963 are not deductible under section 162(a)(2) unless petitioner has proved by the evidence in this case that his employment in Towson was "temporary" rather than "indefinite" or "indeterminate" In our opinion, petitioner has failed to prove that his employment in Towson was "temporary" rather than "indefinite" or "indeterminate." Petitioner did not move to Battle Creek with the OCDM because of the cold climate in Michigan *259 and the doctor's advice against going there because of petitioner's service connected disability. He decided to remain in Washington and look for another position in this area. In February 1960 he did take a position in California for about 6 months, returning to Washington in August 1960. Petitioner's testimony regarding his decisions made at this period of time is, in part, as follows: I found that climate [in California] completely unsuitable for my living conditions because of this service connected disability. And I returned to Washington in August of 1960. I then re-investigated the position which had been offered to me earlier by Bendix Radio Division and we reached an agreement that I would go to work for Bendix 225 at my convenience which I established as January 1961. During the negotiations for this position, it was made clear to Mr. Lewis, the employment officer at Bendix, that I had no interest in a permanent position, that I really didn't want to work full-time. I would prefer a part-time position because my health had not been too good and I was not happy about finding myself having to work during some of the cold winter days and travel back and forth between Washington *260 and Baltimore. When I did accept the position, I informed him I would not be moving to Baltimore and of course this did not necessitate the payment of transportation expenses which would have been in the area of five or six hundred dollars. * * * There was never any intent on my part nor was there ever any information given to Bendix that I considered this any sort of permanent position. The fact that I rented a small room at the cost of approximately $8.00 per week during this period of time, and * * * if I stayed there, I presume I had to eat there because I did not feel that I could under the conditions of trying to work eight hours a day, spend two and a half to three hours a day driving back and forth to Washington, in view of my condition at that time, and certainly not in the winter time. The factual situation here is very much like the factual situation in Peurifoy v. Commissioner, supra. In that case the three petitioners (Peurifoy, Stines and Hall) were employed as construction workers at a site in Kinston, N. Car., for continuous periods of 20 1/2 months, 12 1/2 months, and 8 1/2 months, respectively. Each of the petitioners maintained a permanent residence elsewhere in *261 North Carolina. They deducted their expenses for meals and lodging in Kinston, which deductions were disallowed by the Commissioner on the ground that they were personal, living expenses and fell within the provisions of section 262, supra. We allowed the deductions on the ground that the employment in Kinston was "temporary" rather than "indefinite" and that the taxpayers were, therefore, "away from home." [4] The Court of Appeals for the Fourth Circuit reversed our decision on the ground that our finding was "clearly erroneous" because the taxpayer's employment was "indefinite" rather than "temporary" and that, therefore, Kinston was their "home" for tax purposes and the taxpayers were not "away from home." [5] The Supreme Court, in a per curiam opinion (with three dissents), affirmed the Court of Appeals. In the instant case, Chappuis was employed in Towson for three full years through December 1963, at which time he voluntarily resigned to accept a position with the U.C. Government in Washington, D.C. We do not think petitioner can be heard to say that the climate in Towson was materially different from that in the District of Columbia area. No doubt the *262 fact that petitioner's wife was employed with the U.S. Government in the D.C. area was a factor in not moving the family residence to Towson. In this respect, the instant case is very much like Robert A. Coerver, supra, where the wife was the person employed at a distant city away from the family residence. In his briefs petitioner quotes from and relies upon the dissenting opinion of Mr. Justice Rutledge, in Commissioner v. Flowers, supra, and the dissenting opinion of Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Fortas concurred in Commissioner v. Stidger, supra. Unfortunately for petitioner, dissenting opinions are not the law. Petitioner also relies upon such cases as Wallace v. Commissioner, 144 F. 2d 407 (C.A. 9, 1944), reversing a Memorandum Opinion of this Court; Harvey v. Commissioner, 283 F. 2d 491 (C.A. 9, 1960), reversing and remanding, 32 T.C. 1368; and Burns v. Gray, 287 F. 2d 698 (C.A. 6, 1961). The first two of these cases were also cited in support of the Ninth Circuit's decision in Stidger v. Commissioner, 355 F. 2d 294 (1965), which in turn was reversed by the Supreme Court in Commissioner v. Stidger, supra, and Burns v. Gray was noted by the *263 Supreme Court in Commissioner v. Stidger as being contra to the law. In addition to claiming under section 162(a)(2), supra, petitioner contends that his expenses for meals and lodging are deductible under the provisions of section 212(1), I.R.C. 1954. [6] *264 Section 212 was 226 originally enacted in 1942 as section 23(a)(2) of the Internal Revenue Code of 1939, after the decision of Higgins v. Smith, 308 U.S. 473 (1940). It was intended to apply to expenses related to investment type income and not to the expenses of an employee like petitioner. What is more, there is a general and well settled rule of statutory construction that a specific provision of a statute controls over a general provision appearing in the same statute. Fourco Glass Co. v. Transmirra Corp., 353 U.S. 222, 228-229 (1957). For these reasons the problem presented here should be dealt with under the provisions of section 162 of the Code and not section 212. However, even if section 212 were applied, the same principles would be applicable under it as under section 162 to assure that a deduction would not be allowed for expenses that are personal in nature. Ralph D. Hubbart, 4 T.C. 121 (1944). Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business including - * * * (2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * * ↩
2. The amendment reads: (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * * ↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
4. 27 T.C. u49. ↩
5. 254 F. 2d 483↩.
6. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income: There is no merit in petitioner's further contention that to deprive him of the deductions for his meals and lodging while working in Towson is to deprive him of his equal protection of the laws under Articles IX, X, and XIV of the Constitution of the United States. The respondent's determinations are sustained. Decisions will be entered for the respondent. ↩