John E. Scott v. Commissioner.
Scott v. Commissioner
Docket No. 2959-70 SC.
United States Tax Court
T.C. Memo 1971-158; 1971 Tax Ct. Memo LEXIS 174; 30 T.C.M. (CCH) 680; T.C.M. (RIA) 71158; July 1, 1971, Filed *174 Held: On the facts submitted, petitioner is not entitled to claimed deductions for meals, lodging, or automobile expenses in excess of the amount allowed by the respondent. John E. Scott, pro se. Richard G. Holloway, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1967 of $501.67. The issues for decision are (1) whether petitioner is entitled to deduct expenses for meals and *175 lodging incurred in Detroit in 1967 as "away from home" expenses within the meaning of section 162(a)(2) of the Internal Revenue Code of 1954, [1] and (2) whether petitioner is entitled to deduct automobile expenses in 1967 in excess of the amount allowed by respondent in his statutory notice. Findings of Fact Some of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto are incorporated herein by reference. Petitioner was a resident of Hephzibah, Georgia at the time the petition herein was filed. For the taxable year 1967 petitioner filed an individual Federal income tax return with the Director of the Internal Revenue Service Center, Chamblee, Georgia. He owned a three bedroom house in Hephzibah, which had originally been built for his mother. She died in 1963. Petitioner's brothers and 681 sisters conveyed their respective interests in the house to him in 1966 so that he had fee simple title. During the taxable year involved and prior thereto, the house had been occupied at all times by his *176 brother, who is retired and unmarried. When in Hephzibah, petitioner had the use of one bedroom and the run of the house. He furnished his own meals and did his own cooking. Petitioner is a structural iron worker and has been engaged in this work for thirty years. During 1967 he was a member of the International Association of Bridge, Trestle and Ornamental Iron Workers Union, whose headquarters is in St. Louis, Missouri. At one time or another petitioner has been a member of local chapters (locals) of the union in Augusta, Georgia, Savannah, Georgia, Charleston, South Carolina, Los Angeles, California, Pittsburgh, Pennsylvania, Detroit, Michigan, and Miami, Florida. In 1967, the only locals to which he belonged or paid dues were those in Detroit and Miami. He had been a member of the local in Detroit since 1962. From January 1 to April 7, 1967, petitioner was unemployed. During most of this time he was in Hephzibah, Georgia. Prior to April 7, he investigated the availability of work in the Hephzibah-Augusta area by personally going to the local in Augusta. He was advised that there was no work available either in Augusta or Savannah, where the main office of the local is situated. *177 On that same day, he telephoned the local in Detroit, on his own initiative, with a similar inquiry. He was advised that there was work available, although no specific job was mentioned; he advised the Detroit local he would be there. He left Hephzibah on April 7, 1967, and drove to Detroit, arriving there on April 8, 1967. Upon arrival, petitioner rented a room in Dearborn, Michigan, and then reported to the union hall, where he was referred to a job. From April 11, 1967 to October 18, 1967, petitioner was employed in the Detroit area as set forth below: Date
Michigan
From
To
Employer
Job Site
Wage
4-11-67
5- 1-67
Nicholson Company, Inc.
Detroit
$ 992.82
5- 4-67
5-13-67
Townsend & Bottum, Inc.
Trenton
594.00
5-26-67
5-27-67
Allied Steel Erection, Inc.
Wixom
5-31-67
6-27-67
Allied Steel Erection, Inc.
Detroit
2,750.22
6-28-67
7- 8-67
Anchor Steel & Conveyor Co.
Wixom
7-12-67
8-14-67
Anchor Steel & Conveyor Co.
Detriot
2,737.26
9-11-67
9-13-67
Unit Erector, Inc.
Wayne
130.68
9-14-67
9-29-67
Allied Steel Erection, Inc.
Ford Rouge
Wages in-
Livonia
cluded in
East Det.
total for
Ternstedt
5-26 & 27;
5-31 to
6-27, 1967
10- 3-67
10- 5-67
Noreast Erector, Inc.
Dearborn
142.56
East. Det.
10- 6-67
10-18-67
Allied Steel Erection, Inc.
Ford Rouge
Wages in-
Livonia
cluded in
East Det.
total for
Ternstedt
5-26 to
6-27, 1967
*178 All of the above jobs were secured through the office of the local union in Detroit. Petitioner's total wages received for work performed in the Detroit area in 1967 were $7,347.54. Petitioner left Detroit sometime after October 18, 1967, and returned to Hephzibah, where he again investigated the availability of work by contacting the Augusta and Savannah locals. He also went to Charleston, South Carolina in search of work. He was advised that there was no work available in the area. He then telephoned an acquaintance in the Miami, Florida local to inquire about the work prospects there. He was advised that work was available there, but no specific job was mentioned. On November 20, 1967, petitioner drove from Hephzibah to Miami, a distance of 680 miles. Upon arriving, he rented a room in the Coconut Grove area of that city. From November 28, 1967 to December 11, 1967, petitioner was employed in the Miami area as set forth below: 682 Miami
Date
Employer
Location
Wage
11-28 to 11-28
Reis Steel Erector, Inc.
North Miami
$ 10.00
(2 hours)
11-28 to 11-29
Lewis Steel Erection, Inc.
North Miami
40.80
12- 1 to 12-11
M. R. Harrison Construction Airport Co.
Miami
285.60
*179 Petitioner remained in Miami for the remainder of 1967. His total wages received for work performed in the Miami area in 1967 were $336.40. Petitioner had been employed as a structural iron worker in the Detroit area in 1966, 1965 and 1962, and possibly the intervening years. It was his usual practice to rent living quarters in Dearborn because that was the center of the area where he usually worked. He had stayed in more than one place there prior to 1967 and had also stayed in the same place in succeeding years. Petitioner had been employed as a structural iron worker in the Hephzibah area in 1941 and on only one other occasion between 1941 and 1967, in connection with the construction of an Air Force base at Aiken, South Carolina. On the basis of his experience in Detroit in the years prior to 1967 and in that year, petitioner knew, apparently due to cold weather, that the construction business in Detroit slowed considerably in November and December. Because of this, he made it a practice, in 1967 and prior years, to complete his work assignments in Detroit, and then go south to Miami, Florida. Based on his prior experience, he knew that work was generally available in Miami *180 in November and December of each year. In his job as a structural iron worker, it was necessary for petitioner to have certain tools and safety equipment. He carried between one hundred and twenty-five and one hundred and fifty pounds of tools, safety equipment and work clothes in the trunk of his car during 1967. The tools were in a tool box. They included pocket wrenches, bud wrenches, crescent wrenches, sledge hammers, drift pins, bull pins, squares, burned lighters, torches, rules, chalk lines, tool belts and bolt bags. The work clothes were in a suitcase, and some items were loose in the back seat or trunk. Petitioner had a wheeled cart for carrying the tools from his car to his work area. The varied work performed by petitioner required the use of different tools and, while he did not use all of his tools every day, he transported all of them to the job site each day. His employers furnished all the power-driven tools required by petitioner in his work. They also provided space for him to park his automobile at the various job sites. The job sites were all within a radius of 40 miles from his rented room in Dearborn. There was no public transportation available from his rented *181 room to his various jobs. He would have driven his car to work whether or not public transportation was available and whether or not he had to carry his tools. On his tax return, petitioner claimed expenses for meals and lodging in the amount of $1,604.68 and automobile expenses of $1,710, based on 18,000 miles of business use at ten cents per mile for the first 15,000 miles and seven cents per mile for 3,000 miles. In his statutory notice of deficiency respondent made the following determination with respect to petitioner's claimed deductions for meals and lodging: (b) The deduction of $1,604.68 claimed for meals and lodging is not allowed to the extent of $1,294.35 because it has not been established that any amount in excess of $310.33 constitutes an ordinary and necessary business expense. Therefore, your taxable income is increased in the amount of $1,294.35, as set out below: Per Return
Corrected
Lodging: Michigan
$ 280.00
None
Florida
61.18
$ 61.18
Meals: Michigan
903.80
None
Florida
227.70
227.70
Tips: Michigan
110.00
None
Florida 22.00
21.45
Total $1,604.68
$ 310.33
Meals and lodging per return
$1,604.68
As corrected herein 310.33
Taxable income increased $1,294.35
*182 683 Respondent also made the following determination with respect to petitioner's claimed deduction for automobile expenses: (a) The deduction of $1,710.00 claimed for automobile expenses is not allowed to the extent of $1,114.00 because it has not been established that any amount in excess of $596.00 constitutes an ordinary and necessary business expense. Therefore, your taxable income is increased in the amount of $1,114.00. This determination is the equivalent of allowing petitioner a deduction based on 5,960 business miles at a rate of ten per mile. Opinion The issues for decision are (1) whether petitioner is entitled to deduct expenses for meals and lodging incurred in Detroit in 1967 as "away from home" expenses within the meaning of section 162(a)(2), [2] and (2) whether petitioner is entitled to deduct automobile expenses in 1967 in excess of the amount allowed by respondent. *183 Petitioner contends that his home for tax purposes was in Hephzibah, Georgia during 1967 and thus, that the expenses for meals and lodging incurred in Detroit should be allowed as a deduction for "away from home" expenses. Respondent, on the other hand, argues that petitioner's home for tax purposes in 1967 was in Detroit and thus, that the expenses incurred for meals and lodging there are nondeductible personal, living expenses. Section 262. [3] For the reasons set forth below, we agree with the respondent. This Court has consistently held that "home" as used in section 162 means the vicinity of the taxpayer's principal employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. Ronald D. Kroll [Dec. 28,864], 49 T.C. 557 (1968); Leo M. Verner, 39 T.C. 749 (1963); Floyd Garlock, 34 T.C. 611 (1960). See also Commissioner v. Stidger, 386 U.S. 287 (1967), *184 reversing 355 F. 2d 294 (C.A. 9, 1965), which reversed 40 T.C. 896 (1963). In order for a taxpayer to deduct the expenses of traveling to and living at a place of employment, such expenses must be required by the "exigencies of his employment." Commissioner v. Flowers, 326 U.S. 465 (1946), rehearing denied 326 U.S. 812 (1946). If a taxpayer chooses for personal reasons to maintain a residence far from his principal place of employment, then his additional traveling and living expenses are incurred as a result of that personal choice, and are therefore not deductible. Truman C. Tucker, 55 T.C. 783 (1971). In the case at bar the record clearly shows that petitioner's tax home was Detroit. He has worked there for most of the years since 1962 and has been a member of the Detroit local union since that time. His only other work during the year in question and apparently during the years immediately preceding 1967 was in Miami, Florida. His usual practice was to go there after the weather turned cold and the work slowed in the Detroit area. In all his years as a structural iron worker, beginning in 1941, he has been employed *185 in the general area of Hephzibah a total of two times, once in 1941 and once since then. On the basis of the foregoing, we hold that petitioner's home for Federal income tax purposes was Detroit and, accordingly we sustain respondent's determination with respect to this issue. The second issue concerns the deduction of automobile expenses. Respondent has allowed a deduction of $596. In allowing this amount, respondent took into account 684 the mileage from Detroit to Miami, as well as certain business mileage in the Detroit area incurred by petitioner in driving from one job site to another on a given day for the same employer. Petitioner has presented three arguments to support his claim for a deduction for the full amount claimed on his return: (1) that he was "away from home" when the mileage was incurred; (2) that he used his car to travel from one job site to another for the same employer on the same day; (3) that he is entitled to the deduction because he had to carry bulky tools in his car; tools that were necessary for his work. In view of our holding on the first issue petitioner's first argument above cannot prevail. In reference to his second argument, respondent *186 has allowed a certain amount of mileage based on this argument. Petitioner, upon whom the burden rests, has not established facts to show that the amount allowed by respondent is insufficient. Thus, the second argument is without merit. The third argument concerns whether the deduction should be allowed for the use of petitioner's automobile in transporting tools to the various job sites. In Robert A. Hitt, 55 T.C. 628 (1971), the petitioner was employed as a flight officer during the year in question by United Airlines. He was required by his employer to carry a flight bag on every flight. The evidence established that if he had not been required to take his flight bag with him on his trips, he would still have driven his automobile, since adequate public transportation was not available between his home and the airport. This Court sustained respondent's disallowance of the claimed deduction for transportation. In so holding the Court considered Sullivan v. Commissioner, 368 F. 2d 1007 (C.A. 2, 1966), reversing 45 T.C. 217 (1965), and Tyne v. Commissioner, 385 F. 2d 40 (C.A. 7, 1967) and 409 F. 2d 485 (C.A. 7, 1969), *187 certiorari denied 396 U.S. 838 (1969), reversing a Memorandum Opinion of this Court, wherein it was held that a deduction for at least a portion of the transportation expenses should be allowed where the taxpayer is required to transport tools to work, but concluded that those cases were not controlling where, as in the present case, the decision would be appealable to the U.S. Court of Appeals for the Fifth Circuit, which has not as yet expressed a view on this issue in a decision which is squarely in point. This Court stated, at page 633: After a careful review of the many decided cases on this question, we conclude and hold that if a taxpayer would have used his personal automobile in any event to commute to and from work, as in the instant case, no deduction should be allowed for transporting tools; the need to transport equipment would not have burdened the taxpayer with any additional expense and the entire cost of going to and returning from work is a personal commutation expense. A deduction for transporting heavy, bulky, unwieldy and cumbersome tools and equipment should be allowed only to the extent that the transporting of such items causes a taxpayer to *188 incur expenses above and beyond those he would otherwise incur in commuting. In the present case, although petitioner at times may have used some of the tools which he apparently carried in his automobile at all times, there is no showing that he was required by any of his employers to furnish such tools. Petitioner's employers supplied all the larger power tools necessary in his work and even if they had required him to furnish some of these smaller tools, we hold for the reasons set forth in Robert A. Hitt, supra, that petitioner is not entitled to a deduction herein based upon the transportation of tools. He testified that he would have driven his car to work regardless of whether or not public transportation was available and whether or not he was required to transport his tools to work. For these reasons, we sustain respondent's determination with respect to this issue. Decision will be entered for the respondent. 685 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business, and * * *.↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩