LARRY R. ADAMSON AND FLORENCE A. ADAMSON, Petitioners v. COMMISSIONER OF INTERNAL revenue, Respondent
Adamson v. Commissioner
Docket No. 3434-72.
United States Tax Court
T.C. Memo 1973-107; 1973 Tax Ct. Memo LEXIS 181; 32 T.C.M. (CCH) 484; T.C.M. (RIA) 73107; May 7, 1973, Filed Larry R. Adamson, pro se. Roger Rhodes, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in the income tax liability of petitioners for the taxable year 1970 in the amount of $1,262.00. *182 Certain concessions having been made, the issues remaining for decision are: (1) Whether petitioners were away from home for purposes of section 162 [1] while petitioner-husband was attending New York 2 University; (2) Whether petitioners are entitled to a deduction under either section 162 or 217 for transportation expenses from New York to Tucson, Arizona, in connection with move; (3) Whether petitioners' entertainment expenses incurred by petitioners were ordinary and necessary expenses of petitioners' business; (4) Whether expenses incurred by petitioner-husband in securing admission to a second State's bar are deductible; and (5) Whether the cost of installing a telephone at a new residence is a deductible expense under section 217. FINDINGS OF FACT Some of the facts have been stipulated; they are so found and incorporated herein by this reference. The petitioners, Larry R. and Florence A. Adamson, filed their joint Federal income tax return for the taxable year 1970 with the Internal Revenue Service Center, Ogden, Utah. Petitioners' legal residence on *183 the date of the filing of the petition herein was Tucson, Arizona. Petitioner Florence A. Adamson is a party herein only by reason of having filed a joint return with her husband, Larry R. Adamson, and the latter will hereinafter be referred to as petitioner or Larry. Petitioner received a Bachelor of Science in Business Administration from the University of Arizona in June 1957 with a major in accounting. He served as an officer in the U. S. 3 Navy from June 1957 to June 1960. He later attended graduate school at the University of Arizona from September 1960 to May 1961, and he satisfactorily completed the Certified Public Accountant's (CPA) examination in November 1961. Petitioner received his CPA certificate in Arizona in January 1963 and his CPA certificate in California in February 1964. The Petitioner worked for Certified Public Accounting firms in California from at least 1962 through August 1969. Starting in 1964 he worked almost exclusively in the field of taxation. The petitioner started a four-year night law school program at the University of San Francisco in September 1965 and received his law degree from that school in June 1969.He passed the California *184 Bar examination and was admitted to the State Bar of California in 1969. He never practiced law in California. During the seven years he lived in California from June 1962 until August 1969, petitioner rented (on month-to-month oral lease) a single residence in San Francisco. Petitioner decided that a Master of Law in Taxation from New York University (NYU) would be very beneficial to his specialization in taxation and he made arrangements to attend that program starting in September 1969. Before leaving for New York, he discussed his job future with the partners of the CPA firm for which he had been working for four years. He was advised that partnership opportunities were favorable and 4 he was encouraged to return to the firm after completing his program at NYU. prior to leaving San Francisco, petitioner had arranged for employment interviews with various law firms in Tucson. Petitioner drove from San Francisco to Tucson and then on to New York. In Tucson petitioner interviewed a number of law firms and received an offer of employment from one firm prior to his leaving for New York. Petitioner is presently employed by that firm. The petitioner proceeded to New *185 York from Tucson and after getting settled in New York, within a two-week period he accepted the offer of the Tucson law firm. The primary factor influencing his decision to settle in Tucson was his belief that Tucson would be a better environment in which to raise a family. The petitioner had no intention of remaining in New York after completing his LL.M. program. He intended to stay only for the definite nine-month period required by the educational program. The petitioners remained in New York from the fall of 1969 through the spring of 1970. During this time, petitioner attended NYU and Florence was employed on a full-time basis. The earnings of Florence totaled approximately $2,300 during the fall of 1969 and approximately $4,700 during the spring of 1970. While the petitioners were in New York in 1970, they paid 5 $796 for the rental of an apartment; $39 for telephone service, and Larry incurred approximately $1,200 in meal expenses. The petitioners moved to Tucson at the end of the 1969-1970 school year.
Petitioner was the commanding officer of a Naval Reserve Surface Division in Tuscon. All 12 officers of the division and their wives were invited to dinner *186 at the petitioners' home on October 10, 1970. Petitioners incurred cost for food of $38 and for liquor of $21, or a total cost of $59. There is no requirement contained in Navy regulations that a Naval officer entertain junior officers. However, the petitioner believed that his actions would lead to higher morale within his unit and consequently a better functioning unit. Larry paid the State Bar of Arizona an examination fee of $100 and an investigation fee of $125 for taking the February 1971 Arizona Bar examination. He also paid $100 for bar review courses and $2 for Certificate of Good Standing before the Supreme Court of the State of California. The petitioners, while they were in New York, left almost 80 percent of their personal effects and belongings with Florence's parents in California. They incurred $280 in moving these personal effects stored in California to Tucson. The petitioners drove more than 2,850 miles in moving from New York to Arizona, but 2,850 was the direct mileage distance from New York to Arizona. 6 In his return for the taxable year in question, petitioner deducted (1) certain expenses incurred in New York as section 162 expenses incurred *187 while petitioner was away form home; (2) 12 cents a mile for mileage driven from New York to Arizona; (3) the expenses incurred in entertaining petitioner's fellow Naval Reserve officers; (4) the expenses related to petitioner's admission to the Arizona State Bar; and (5) the cost of installing a telephone in petitioner's Arizona residence. Respondent in his notice of deficiency increased petitioners' taxable income to reflect the disallowance in full of all of the above items, except as to the cost of traveling from New York to Tucson he allowed petitioners a deduction of 6 cents per mile. OPINION
The first issue is whether expenses incurred by petitioners for travel, meals, and lodging while Larry was attending NYU are deductibel under section 162 as expenditures incurred while away from home in the pursuit of educational endeavors. Section 1.162-5(e), Income Tax Regs., provides in pertinent part: Travel away from home. (1) If an individual travels away from home primarily to obtain education the expenses of which are deductibe under this section, his expenditures for travel, meals and lodging while away from home are deductible. * * * The respondent has conceded *188 that for the purpose of this case the educational expenses are deductible. Therefore, the 7 crux of this issue involves a determination of whether petitioner was away from home in pursuing his LL.M. program at NYU. See Jones v. Commissioner, 444 F.2d 508 (C.A. 5, 1971), affirming 54 T.C. 734 (1970). The petitioner argues that he had established a home in San Francisco, his stay in New York was for only a definite period of time, and he intended to return to his home in San Francisco after completion of his educational program at NYU. He therefore contends that while in New York for a definite temporary period of time he was away from home. This Court has consistently held that "home" in section 162(a)(2) means the taxpayer's principal place of employment. See Emil J. Michaels, 53 53 T.C. 269, 273 (1969), and numerous cases cited therein. We have also recognized that an exception exists and that a taxpayer's principal place of work is not a home for purposes of section 162 if his work there is only temporary and for a definite limited period of time. See Emil J. Michaels, supra, and Peurifoy v. Commissioner, 358 U.S. 59 (1958). *189 In effect, our petitioner contends that his situation fits within the exception. We disagree. It is generally held that a taxpayer cannot be away from home within the meaning of section 162 unless he has a home to be away from, see Rosenspan v. United States, 438 F.2d 905 (C.A. 2, 1971), and reasoned authority holds that a taxpayer has a "home" for this purpose only when it appears that he has 8 incurred substantial continuing living expenses at a permanent place of residence. James v. United States, 308 F.2d 204, 208 (C.A. 9, 1962). See also Ronald D. Kroll, 49 T.C. 557 (1968). The above interpretation is in keeping with the purpose of the away-from-home provision which was designed "to mitigate the burden of a taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll, supra, at 562. See also Michaels, supra. In the present case, petitioner points to San Francisco as a home he was away from while he studied in New York.However, his connections with this city are far too tenuous to warrant characterizing *190 it as his home while he was in New York. See Carmen Chimento, 52 T.C. 1067 (1969), affd. 438 F. 2d 643 (C.A. 3, 1971). The petitioner's tenuous ties to San Francisco caused him no duplication of living expenses whatsoever. In short, it may be said that the petitioner "carried" his home on his back" to New York City. See Kenneth H. Hicks, 47 T.C. 71 (1966); Henry C. Deneke, 42 T.C. 981 (1964); and James v. United States, supra.The petitioner retained no house in San Francisco. The storing of his personal effects with his in-laws appears to be an act of convenience only. Furthermore, the facts do not warrant a finding that he truly believed he would return to his job in San Francisco. Cf. Michaels, supra; and Laurence P. Dowd, 37 T.C. 399 (1961). 9 Petitioner's actions are inconsistent with such a belief. He had numerous job interviews in Tucson after leaving San Francisco and only two weeks after settling in New York he accepted an offer from a Tucson law firm. His decision was for the most part based on a preference to raise his family in Tucson. This is hardly a spur-of-the-moment *191 decision. It is clear that the petitioner had set his sights on Tucson and severed his ties with San Francisco upon leaving. In short, there is nothing in the record which convinces us that the petitioner has "left his heart in San Francisco" and intended to return there after schooling in New York. [2]
The second issue is whether petitioner is entitled to a deduction for transportation costs incurred in moving from New York to Tucson under either section 162 or 217. The respondent considered such costs as moving expenses and allowed the petitioner to deduct his transportation expenses under section 217. Relying on Rev. Proc. 71-2, 1971-1 C.B. 659, the prespondent allowed the petitioner a standard mileage rate of 6 cents per mile. The petitioner instead relied on Rev. Proc. 70-25, 1970-2 C.B. 506, and computed his deduction on a standard mileage rate *192 10 of 12 cents per mile. This Rev. Proc. provides for an increased mileage rate for the cost of operating a vehicle used in a trade or business. The law is clear that these expenses are not deductibel under section 162. See Lull v. Commissioner, 434 F.2d 615 (C.A 9, 1970), affirming 51 T.C. 841 (1969); AND Jones v. Commissioner, supra, and the petitioner inappropriately relied on Rev. Proc. 70-25. The third issue for our consideration is whether the cost of food and liquor for a dinner given for the officers and wives of a naval Reserve unit which petitioner commanded is an ordinary and necessary expense of a trade or business. The petitioner, as the commanding officer of a Naval Reserve unit, was not required to finance a dinner for his officers and their wives. However, he contends that the function was to promote goodwill and greater cooperation, thereby increasing the achievement of the unit and in turn increasing the petitioner's chances of promotion. He claims that the expense is an ordinary and necessary business expense related to his position as commander in the Naval Reserve. Again, we disagree with petitioner's *193 contention. In Bercaw v. Commissioner, 165 F.2d 521 (C.A. 4, 1948), affirming a Memorandum Opinion of this Court, the Court of Appeals held that a voluntary expense of an army officer was a personal expenditure and not an ordinary and necessary expense within the meaning of section 23(a) (1) (A) (precursor to section 162) when the expenditure 11 was not required by regulation or order. The reasoning of that case is applicable to deny the deduction in the case at bar. See also Commissioner v. Notch, 180 F.2d 859 (C.A. 6, 1950), reversing 11 T.C. 777 (1949), and Rev. Rul. 55-201, 1955-1 C.B. 269. The fourth issue is whether certain related expenses incurred by petitioner in gaining admission to the State Bar of Arizona after he was already admitted as a member of the State Bar of California are deductible under section 162(a) or section 212(1). All of the expenses in question on this issue were directly related to petitioner's attempt to gain admission to practice before the Bar of Arizona. In Arthur E. Ryman, Jr., 51 T.C. 799 (1969), similar expenses involved with the taxpayer's admission to a second State *194 Bar were held not to be deductible under section 162 because the benefits of admission to the Bar are of an infinite duration which extend beyond the year in which the expense was incurred and expenditures related to such benefits are in the nature of capital expenditure. We adopt the reasoning of that case at bar. Furthermore, since the expenses are capital in nature and not the type of expense allowable under section 162, petitioner's contention that section 212 would allow a deduction herein is incorrect. See McDonald v. Commissioner, 323 U.S. 57 (1944); and James B. Cary, 56 T.C. 477, 483 (1971), affd. 460 F.2d 1259 (C.A. 4, 12 1972). The petitioner attempts to distinguish the Ryman case from the present situation in that the petitioner herein intends to practice law full time, whereas Ryman intended to function principally as a law professor and only secondarily as a practicing attorney in the second State in which he was admitted. This distinction is insignificant and does not affect the capital nature of the expenditure in question. The final issue is concerned with a deduction claimed under section 217. [3]
*195 The petitioner claimed as a deduction under section 217(b) (1) (E) [4] the cost of installing a telephone in his Tucson home. He contends this is a reasonable expense incidental to the purchase of his new home which would otherwise be taken into account in determining the basis of the new residence. We disagree. Clearly, the reasonable expenses incident to the 13 purchase of a new home as found in section 217 were not intended to include the expense in question. See H. Rept.No. 91-413, part 1, at 76, 91st Cong., 1st Sess. (1969), 1969-3 C.B. 200. The purchase-related expenses include attorneys' fees, escrow fees, appraisal fees, title costs, "points" or loan placement charges which do not represent interest, and similar expenses reasonable necessary to effect the purchase of the new residence, but do not include prorations of real estate taxes or amounts which represent payments or prepayments of interest and do not include the purchase price of the residence. *196 Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩
2. While there is every indication that the petitioner knew his eventual home after New York would be Tucson, there is insufficient evidence upon which to find that the petitioner had established a home in Tucson for purposes of being away from home prior to his leaving for study in New York. ↩
3. SEC. 217. MOVING EXPENSE. (a) Deduction Allowed. There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work. ↩
4. SEC. 217 (b) Definition of Moving Expenses, - (1)In general.- For purposes of this section, the term "moving expenses" means only the reasonable expenses - * * * (E) constituting qualified residence sale, purchase, or lease expenses. (2) Qualified residence sale, etc., expenses. - For purposes of paragraph (1) (E), the term "qualified residence sale, purchase, or lease expenses" means only reasonable expenses incident to - * * * (B) the purchase by the taxpayer * * * of a new residence in the general location of the new principal place of work which * * * would be taken into account in determining - (i) the adjusted basis of the new residence, * * * ↩