OENIA C. VAUGHTERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vaughters v. Commissioner
Docket No. 44938-86.
United States Tax Court
T.C. Memo 1988-276; 1988 Tax Ct. Memo LEXIS 310; 55 T.C.M. (CCH) 1150; T.C.M. (RIA) 88276; June 27, 1988
Oenia C. Vaughters, pro se Susan S. Canavello, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT *311 AND OPINION PARR, Judge: Respondent determined a deficiency in income tax for 1982 in the amount of $ 9.819.53. The sole issue is whether petitioner is allowed to deduct $ 101,619, either as a business bad debt or a farming loss during 1982. FINDINGS OF FACT Some of the facts of this case have been stipulated, and the stipulation is incorporated herein. When petitioner, a widow, filed the petition in this case, she resided in Eudora, Arkansas. On January 16, 1978, petitioner borrowed $ 108,025 from Dixie Business Investment Co. (Dixie Business), for use in a farming operation to be conducted by her son, Ralph McCurdy (Ralph). The farm was on leased acreage near Texarkana, Texas. The loan from Dixie Business was secured by a promissory note and the pledge of a deed of trust note (Anderson-Tully note) dated June 14, 1969, payable to petitioner from the Anderson-Tully Co. of Memphis, Tennessee. [1] The Dixie Business note was payable in five equal annual installments of $ 21,605 each beginning January 16, 1979 and ending January 16, 1983, at eight percent interest. The note could be prepaid without penalty. *312 Petitioner transferred the money borrowed from Dixie Business to Ralph for use in purchasing farm equipment, leasing acreage, and paying other farm expenses, including living expenses for Ralph and his family who resided on the farm. Neither petitioner nor Ralph treated the amounts advanced to him as a loan. Ralph did not sign any promissory notes to petitioner. No repayment schedule or interest rate was set. Petitioner did not expect repayment unless the farm made a profit. Neither did petitioner and Ralph enter into any written partnership agreement. Their oral agreement was, as best we can ascertain from the testimony, that petitioner was to supply most of the money to run the farm while Ralph would do the actual farming. Profits, if any, would be applied first against the outstanding indebtedness. Ralph would be allowed to keep an unspecified amount necessary to support himself and his family. Beyond that, to the extent the farm showed additional profits petitioner would receive "a share." However, there was no agreement as to how petitioner's share would be calculated. She testified simply that her son assured her, "I'll treat you right," and that, "If I do well, you'll *313 get back more than you put in." Although petitioner never received cash from the farm, it did well enough in the early years to meet expenses and to cover payments due on the Dixie Investment note. Such payments, totaling $ 64,815, were timely made for 1979, 1980, and 1981. However, because of drought the farm began to suffer severe crop failures in1980 and 1981. Beginning in April 1980 and continuing through April 1982 petitioner executed a series of 14 short-term promissory notes to the Bank of Dixie, Lake Providence, Louisiana, for amounts ranging from $ 3,000 to slightly more than $ 19,000, at interest rates from 17 percent to 20 percent. The notes were for terms ranging from a month to a year. Much of the money borrowed was used to keep the farm afloat, but petitioner kept no records of how much was so used. Many of the notes signed by petitioner represent renewals and are duplicative to that extent. Twelve notes were signed by petitioner alone and two were cosigned by Ralph. Most of the notes were unsecured. The notes cosigned by Ralph were dated March 30, 1981, for $ 3,000 and June 24, 1981, for $ 17,200.79. The June 24th note included a renewal of the March 30th *314 note, so that Ralph's joint liability never exceeded $ 17,200.79. The $ 17.200.79 note appears to have been paid by renewal and rolled into a note dated January 12, 1982, for $ 19,074.93; however, that note was signed by petitioner alone, thereby relieving Ralph of any liability. This note (like its predecessor) was secured by a $ 20,000 mortgage. [2]
Despite the infusion of money from the Bank of Dixie loans, the farming venture was abandoned in1 982. The farm equipment was seized and sold at an auction on October 1, 1982. In February 1982 petitioner decided to pay off all the notes on which she was then liable. [3] To accomplish this, she arranged for payment to herself of $ 105,118.49 by Anderson-Tully. This amount represented the prepayment of amounts owed to petitioner under notes from that company, discounted for present value at 12 percent. Petitioner deposited the $ 105,118.49 and issues checks to the Bank of Dixie in the amount of $ 47,295.61, [4] to Dixie Business in the amount of $ 41,151.14, and to Ralph in the amount of $ 15,000. [5] The amounts paid to the *315 Bank of Dixie and Dixie Business represented the payoff of all outstanding promissory notes on which petitioner was liable. Petitioner's payment to Ralph was used by him to pay off a note to Farmer's Coop., which was apparently his individual liability, to help him avoid bankruptcy. *316 Ralph made all the decisions concerning the farm, although he kept petitioner advised informally from time to time. He never gave her an accounting nor did she request one. Neither petitioner nor Ralph kept records of the money supplied by petitioner. Petitioner visited the farm from time to time, but was not familiar with its business operations; in fact, she was not able to testify how many acres the farm included. All income and losses from the farm were reported by Ralph alone on his individual income tax return. [6] Ralph did not report the farm income and losses as partnership income but as his own personal income. Ralph was not called as a witness. OPINION *317 Petitioner bears the burden of proving entitlement to the deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142 (a). [7] Petitioner impressed us as a truthful witness and a kind and loving mother. Unfortunately, however, we cannot find that the payments she made in 19882 are deductible either as a business bad debt or as a partnership loss from farming.
Section 166(a) allows a deduction for a worthless debt owed to the taxpayer [8] which was created or acquired in connection with a taxpayer's trade or business. The debt is deductible in the year in which it becomes worthless. Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay *318 a fixed or determinable sum of money. A gift or contribution to capital is not considered a debt for purposes of section 166. Section 1.166-a(c), Income Tax Regs.
No bona fide debt existed here. First, petitioner testified steadfastly that she did not intent the amounts transferred to be a loan to her son, but they were rather her contribution to a farming partnership. We agree that no loan was intended. Ralph never, either as an individual or as a general partner, signed any promissory notes to his mother; no repayment schedule was established, no interest rate was set; and, most importantly, neither party treated the amounts as a loan. Petitioner was even uncertain how much money was in fact transferred to Ralph, since she kept no records. True, Ralph agreed to and did make the payments on the Dixie Business loan out of farm income; however, *319 Ralph's obligation to make these payments was wholly contingent on profits. When there were no profits, petitioner repaid the loans and did not seek to hold Ralph liable to herself in any way. Thus, under the agreement, no debt in petitioner's favor arose. See Bercaw v. Commissioner,165 F.2d 521 (4th Cir. 1948). [9]
We next examine whether the amounts paid to Ralph were contributions to a farming partnership, and whether therefore a portion of the losses suffered by the farming operation are deductible by petitioner as a capital loss. For income tax purposes, the term "partnership" is not limited to the common law meaning of partnership but is broader in scope. It includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on. Section 761(a); section 7701(a)(2). A partnership is created when persons join together *320 their money, goods, labor, or sell for the purpose of carrying on a trade, profession, or business and where there is community of interest in the profits and losses. Commissioner v. Culbertson,337 U.S. 733 (1949); Commissioner v. Tower,327 U.S. 280 (19460. The question is: [w]hether, considering all the facts -- the agreement, the conduct of the parties in executing is provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent -- the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * * [Commissioner v. Culbertson, supra at 742.] We cannot find from this record that petitioner and Ralph, acting with a business purpose, intended to join together in the present conduct of an enterprise. Both petitioner and Ralph treated the farm as Ralph's own. He made all the business decisions. He did not account to petitioner, nor *321 did she ask him to do so. On his income tax returns, Ralph treated all losses from the farm operation as his own individual losses, not as partnership losses. He never filed a partnership return nor did he issue Forms K-1 to petitioner, although, as is evident from his 1982 return (which shows partnership losses in two other entities) he well knew how to do this. Moreover, the existence of a "business purpose" requires entering into a transaction with an intent to make a profit. Petitioner kept no records of her own. She had never requested or been shown records kept by Ralph. She could not say how much money she had contributed to the enterprise. She did not know h ow much land was being leased. Worse, she did not know how her share of profits would be calculated, or what would trigger payment to her. This does not reflect a business purpose by petitioner. Further, the vague understanding between Ralph and petitioner about sharing profits did not create an enforceable partnership agreement. The terms of petitioner's share were never spelled out, either as to percentage, to method of payment, or to time of payment. Ralph was under no obligation to share anything at all *322 with petitioner until an undefined amount for his personal living expenses had been surpassed. The facts in this case are similar to those we considered in Kamborian v. Commissioner,56 T.C. 847 (1971), affd. 468 F.2d 219 (1st Cir. 19772). There the taxpayer advanced $ 50,000 to his son for a business. The business failed, and the father claimed a deduction as either a worthless debt or a capital loss. The agreement between taxpayer and his son was oral and vague; no books and records were produced at trial; and, as here, the son was not called to testify. We fund that the taxpayer had failed to establish entitlement to the deduction. In this case, we believe petitioner's primary motive and intent was to help her son. On his part, Ralph wanted to assure his mother she would be cared for in the future. Petitioner had a vague hope that the farm would become self-sustaining and that some profit might result. However, she has not met her burden of proving that the transaction she entered into with Ralph was either a loan or a partnership entered into for profit. [10] See Howell v. Commissioner,431 T.C. 13 (1963), affd. per curiam *323 332 F.2dc 428 (3d Cir. 1964); Ewing v. Commissioner,20 T.C. 216 (1953), affd. 2113 F.2d 438 (2d Cir. 1954). To reflect a concession by respondent, Decision will be entered under Rule 155.
Footnotes
1. The Anderson-Tully note was in the original sum of $ 275,000, and represented payments due petitioner from the sale of her deceased husband's business. The Anderson-Tully note was payable to petitioner in yearly installments, the last of which was due June 14, 1987. The installment payments apparently varied in amount, but slightly exceeded the amounts that petitioner would owe to Dixie Business each year. ↩
2. We assume the mortgage was on petitioner's unrelated real property since the farm was only leased. ↩
3. As of February 1982, the last due date on Bank of Dixie notes was June 15, 19882. Petitioner wanted to pay these off early to avoid interest rates averaging 18 percent. However, it is not clear why petitioner prepaid the Dixie Business loan, whose final payment was not due until January 16, 1983 at 8 percent interest. ↩
4. This amount includes interest of $ 2,556.21. We cannot tell from petitioner's return whether this amount was included in the interest deducted on petitioner's Schedule A, which shows $ 8.864 paid to the Bank of Dixie. ↩
5. These amounts total $ 103,446.75, which is $ 1,827.75 more than the loss claimed. On her return, petitioner showed the payment to Dixie Business as $ 39,323. The payment to Ralph McCurdy was reflected on the return as a payment to "Farmer's Coop." On her return petitioner lists $ 1,828 as deductible interest paid to "DBIC." This apparently accounts for the discrepancy. Apparently, she did not carve out the interest component of the payment to Bank of Dixie. See note 4, above. ↩
6. Ralph's income tax return for 1979 is not in the record. In 1980 Ralph reported gross farm profits of $ 150,087, expenses of $ 83,885, and depreciation of $ 24,723 on farm equipment, for a loss of $ 23,994. In 1981 he reported gross profits of $ 51,684 and expenses of $ 83,885, and depreciation of $ 23,801 for a loss of $ 56,002. No farm income or loss was reported in 19882, but Ralph showed an $ 849 loss on the sale of the equipment. Ralph thus treated the farm and equipment as his sole property. ↩
7. Unless otherwise noted all section references are to the Internal Revenue Code of 1954 as in effect during the year in isue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
8. Section 1.166-1(a), Income Tax Regs. The debts to Dixie Business and Bank of Dixie were owed by petitioner, not to her. We therefore look to see whether a creditor-debtor relationship existed between petitioner and Ralph. See Hardy v. Commissioner,54 T.C. 1194, 1196↩ (1970). 9. See also Watts v. Commissioner,T.C. Memo. 1968-183; O'Connell v. Commissioner,T.C. Memo. 1964-38↩
10. While this may seem to be a harsh result, we note that Ralph already claimed and rceived the full benefit of the losses sustained by the farm, and that petitioner knew and acquiesced in his doing so. ↩